## CONNOR v. JOHNSON.

1. REAL ESTATE—DAMAGES—TRESPASS.—In action alone for damages to land from trespass, defendant cannot set up title in third party as defense, or that he entered under license from the true owner, where plaintiff is in possession under color of title.
2. IBID.—BOUNDARIES—DEED.—Party holding land under deed, is bound by boundaries set out in deed, and cannot refer his claim to boundaries claimed by one holding the land by equitable title only whose title he purchased.
3. IBID.—IBID.—Rules to be observed in locating boundaries of lands stated, and held that Judge did not violate it.
4. IBID.—IBID.—EVIDENCE.—In questions of location, testimony as to trespass beyond disputed line is not prejudicial error.
5. BOUNDARY—COMPROMISE.—EVIDENCE of compromise between plaintiff and a third party as to boundary, is not admissible on question of another boundary between plaintiff and defendant, who is not a privy of such third person.
6. EVIDENCE—PRINCIPAL AND AGENT.—Agent may testify that he was so appointed by parol.

7. REPLY.—Evidence held admissible in reply.

8. REAL ESTATE—BOUNDARIES.—Judge cannot instruct jury how land should be located, but can only give the jury the principles of law governing such cases.

Before WATTS, J., Spartanburg, November term, 1899. Affirmed.

Action for damages for trespass on land by Harriet L. Connor against Crede F. Johnson. From judgment for plaintiff, defendant appeals. So much of the charge as is questioned by the exceptions is as follows:

"Mr. Foreman and Gentlemen: This is a claim brought by the plaintiff here to recover damages against the defendant for interfering with the possession of land. The plaintiff alleges that she was in lawful possession of the land described in the complaint and entitled to enjoy and use and occupy it; that her possession has been disturbed by the defendant's maliciously, wilfully and unlawfully entering upon the land described in the complaint and dispossessing and interfering with her possession; she alleges that she was lawfully in possession under a paper title, and that her possession has been disturbed by the defendant; that he has made repeated trespasses upon the land which was in her possession, and that the entry was malicious, wilful and unlawful, and she, therefore, asks that she be restored to possession and for $250 damage against the defendant. The defendant by his answer denies that the plaintiff is in possession under any paper title of this land described in the complaint, denies that he has committed repeated trespasses upon it, and further alleges that he holds the fee simple title to the land, that he is the owner of it in fee. He, therefore, denies that she is entitled to recover against him the land or any damages. * * * Now, if you believe that the defendant, Johnson, purchased this land from Mr. Caleb Brown and he took a deed and a plat for it, then I charge you as a matter of law that he is not entitled to anything more than that deed and plat covered. He would be entitled to what the deed and plat cov-

ered.   If you think he holds a deed and plat from Mr. Caleb
Brown, then whatever that deed and plat covers he is entitled
to; but if it does not cover this land, he is not entitled to this
land.   If the defendant's deed does cover it, and the plain-
tiff's title covers it also, then, as I said a while ago, which-
ever one has the oldest title, is entitled to the possession of
this land; but if the plaintiff's title covers this land and she
was in possession of it, and the defendant's title does not
cover it—if he has trespassed upon it and put her out of pos-
session, or committed any other trespass upon the land—then
your verdict should be for the plaintiff for such damages
under the testimony in the case as you see proper to give her.

"Now, gentlemen, I think I have made myself plain about
that, or at least I hope so.   If the plaintiff's title covers this
land and the defendant's title does not, and the defendant has
committed trespasses upon the land, then the plaintiff would
be entitled to recover possession and such damages as you see
proper to give.   If the titles of both parties cover this land,
then the oldest one would prevail.   If the title of the defend-
ant covers it and the title of the plaintiff does not, then your
verdict would be for the defendant.   If the title of neither
includes this land here, then your verdict should be for the
defendant, because unless the plaintiff is entitled to posses-
sion, if the defendant is in possession of somebodys else's
land, which the plaintiff has no claim to, that is an affair
hereafter between him and the other party who would be the
owner of the land.   The plaintiff has got no right to recover
possession unless she is entitled to it under the allegations of
her complaint. * * *.

"Now, fortunately, the counsel for the defendant and the
plaintiff here have both long written requests to charge,
which pretty much cover all the law of the case; so I will
read them to you and charge such of them as I see proper,
and I hope you will pay particular attention to the reading of
the requests to charge on the law of the case, so you can
arrive at what the law is.

"The plaintiff requests me to charge you the following

propositions of law: First * * * '4. Proof of title in a
third person will not protect one who has no title against a
suit for damages on account of a trespass committed on land
which is in possession of another under color of title.' I
charge you that. 'Secondly. 1. Where a defendant in a
case like this undertakes to justify his entry upon land in pos-
session of a plaintiff who has color of title to the same, the
burden of proof is upon him, and before he can relieve him-
self from liability he must satisfy the jury by the preponder-
ance of the evidence of one or the other of the following
facts: (1st) that he entered on such land with the consent of
the plaintiff, or (2d) that he was in possession of such land
under color of title, or (3d) that he has a good title to such
land.' I charge you that. '4. Where a defendant's only
claim of title in a case like this, to land in dispute, is a deed
from a former owner, such deed is not sufficient to justify his
entry upon land in possession of another, under color of title,
unless such deed actually covers and includes the identical
land in dispute.' I charge you that. '5. Where a deed,
after giving certain adjacent boundaries, refers to a plat at-
tached to such deed for a fuller or better representation of
the land, then this plat becomes incorporated into the deed as
part thereof, and the one who claims title under such a deed
is bound by the description of the land contained therein, and
it cannot be changed or contradicted by parol evidence.' I
charge you that. '6. In locating land covered by a deed the
main questions are: What land does the deed cover? What
land does the deed show the grantor conveyed?' I charge
you that. '7. In locating land covered by a deed, in order to
find out what land the grantor conveyed, the jury are not
bound by any particular rule of location. The rules of loca-
tion which usually govern must yield to the intention of the
grantor as ascertained from the description of the land con-
tained in the deed, and not from any parol evidence which
might tend to contradict or vary its terms.' I charge you
that. '8. While it is true that in locating the lands covered
by a deed, the following rules are usually adopted in the

order named: 1st, natural boundaries, such as creeks, rivers, mounds, &c.; 2d, artificial marks, which means the artificial marks made on the trees by the surveyor who ran the lines when the deed was made, or such old marks as were adopted then; 3d, adjacent boundaries, and, 4th, corners and distances; yet, it is also true, the superior of these rules must, and do, yield to the inferior when it appears from the deed itself that the inferior rule will locate the land so as to carry out the intention of the grantor.' I charge you that. '9. In locating lands covered by a deed, where there are no natural boundaries, such as a creek, a river, mounds, etc., called for in the description contained in the deed, the next highest rule is the artificial marks, made or adopted by the surveyor who ran the line at the time the deed was executed, and not any older marks which may be shown to exist on a different line.' I charge you that. '10. If, in locating the deed from C. P. Brown to the defendant, it appears that the lines as actually surveyed and run when the land was conveyed by Brown, did not go to the line of 1837, and did not cover the land in dispute, then such deed will not be sufficient to justify an entry by a defendant upon land as against one who is in possession of such land under color of title.' I charge you that. '11. Even if it has been shown that C. P. Brown did at one time have title to the land in dispute, still the jury cannot locate the deed from Brown to defendant so as to cover this land, if they find that the line as actually run when the deed was made did not cover this identical land.' I charge you that. '12. It is the duty of the jury in locating land covered by a deed to try and ascertain what land the grantor conveyed, and in doing this they must look to the deed itself and locate the land by that description in the deed which more certainly shows the intention of the grantor.' I charge you that. '13. In locating land covered by a deed where it describes the land as containing a certain definite number of acres, without the addition of the words "more or less," and gives as boundaries some of the adjacent lands, and refers to a plat attached to the deed for a fuller description of the land

conveyed, then, as a rule, the land conveyed is the land marked and delineated by the surveyor who run the lines when the deed was made, and such deed only covers the land so run, marked and described.' I charge you that. '14. When a grantor adopts a plat attached to a deed as the true description of the land sold and conveyed, he thereby only warrants the land sold as described therein, and as run and delineated by the surveyor who surveyed the land at the time the deed and plat was made.' I charge you that. '15. If a plaintiff in a case like this shows that he or she is in possession under color of title of a tract of land, and a defendant comes in and undertakes to justify an entry thereon under a deed from a former owner, the burden of proof is upon him, and in order to relieve himself from liability, he must show by the preponderance of the evidence that his deed does cover such land, and if he does not do so the verdict must be against him.' I charge you that. '16. In locating a deed a jury should take into consideration the number of acres mentioned, the shape of the plat as well as other parts of the description contained in the deed, and locate the land covered by it so as to conform to that part of the description which the more certainly shows the intention of the grantor.' I charge you that. '17. If, from the number of acres mentioned, the shape of the plat, as well as other parts of the description, the jury find that a grantor did not convey a piece of land which is in dispute, then the one who claims under such deed has not title to such land, even though such grantor may at one time have owned it.' I charge you that. '18. If the jury find that plaintiff has a deed which covers the land in dispute, and that she is living on a part of such land, then her possession extends to all the land covered by her deed, and she has a right of action against any one for damages who trespasses upon such land.' I charge you that. '19. The object of rules of location is to enable a jury to find where the surveyor went when he ran his lines, so that in locating the deed from C. P. Brown to the defendant, C. F. Johnson, the jury should try to ascertain where the sur-

veyor went, and if he did not run his lines so as to cover and take in the identical land in dispute, then the deed from Brown to the defendant, if it was made in accordance with such survey, does not include such land, and the defendant cannot hold it by virtue of such deed.' I charge you that.

"The defendant wants the following propositions of law charged: '1. Where a deed refers to a plat for a fuller description, the plat forms a part of the deed; and if the plat calls for adjacent land as a boundary, such boundary is as much a part of the plat as the courses laid down on the plat.' I charge you that. '2. If such a plat calls for adjacent land as a boundary, the new plat cannot cross the lines of the older grant, but the lines of the older grant must first be located; and the lines of the plat must be made to conform to the lines of the older grant, even if the courses and distances on the new plat must be corrected so as to conform to the courses and distances called for by the older grant. This is not remodeling the deed or plat, but is making it conform to the true boundary called for by the plat. For adjacent boundaries called for on the plat, control the courses and distances, also, called for on the plat, and where they conflict there is an error on the plat, and the adjacent boundary is the true line.' I charge you that. '3. If you find that Brown sold Johnson down to the Bush line, and called for the Bush land on his plat as its boundary, the deed will carry him to the Bush line, although the course is erroneously marked "West 29" on the plat. The Bush line must first be located, and the Johnson line must be made to conform to it.' I charge that with this modification, so that should read as follows: that the mark made by the surveyor controls adjacent boundaries. '4. In locating the Bush line, the following rules are to be observed: (1) natural boundaries, if there are any; (2) artificial marks; (3) adjacent boundaries; (4) courses and distances. You must determine whether the Bush line was the straight line, running from the Green Pond corner S. 78 1-2, W. 56 chains and 50 links to a post-oak on the Mills Gap road, as claimed by the defendant; or the line marked on defendant's

plat, "West 29," or the line running from the Green Pond
corner N. 78 3-4, W. 26-83, to a stake; thence S. 70 1-5, W.
16-68 to a stone on Poore's Ford road, as claimed by the
plaintiff, or whether it was any other line.   In locating the
Bush line you must consider (1) which line conformed to the
true line of the adjacent landowner; (2) which line con-
tained the true marks of the survey; (3) which line con-
forms to the course and distance laid down on the Bush plat;
and (4) whether the Bush line was a straight line from the
Green Pond corner to the Mills Gap corner, or a crooked
line; and which of the lines in dispute coincide with the Bush
line.'   I charge you that with this modification, so it should
read: that the mark made by the surveyor controls adjacent
boundaries.   '5. If you find that the Bush line was the
straight line running from the Green Pond corner S. 78 1-2
W. to the post-oak on the Mills Gap road, you must deter-
mine whether Brown sold Johnson only to the north 87 1-2
W. line, claimed by the plaintiff; or to the "West 29" line laid
down on his plat, or to the said Bush line.   And if you find
that the plat made by Brown calls for both the "due west"
courses, and the Bush line as the boundary, and they are not
the same, the deed must be construed most strongly against
the grantor, and Johnson would go to the Bush line, espe-
cially if you find that the Bush line was a well-marked and
recognized boundary line of the Brown tract, and the "West
29" line was an imaginary line, with no marks to locate it.'
I charge you that, with this modification: but if the surveyor
actually ran a due west line when the plat and deed was
made, this line controls adjacent boundaries.   '6. In locat-
ing lines, a course laid down on a plat is less to be relied upon
than adjacent boundaries and marked lines, especially if the
grantor and the grantee agree that the course marked on the
plat is an error, and that the true line is the adjacent bound-
ary called for on the plat.'   I charge you that as being good
law as between the grantor and grantee, but as between
grantee and a third party, the grantee is controlled by the
description in his deed.   '7. If Brown owned the land down

to the straight line running from the Green Pond corner to the Mills Gap corner, and sold it to the defendant, and he now owns it, the plaintiff cannot recover, unless he has proven trespass south of said line.' I charge you that. '8. If the defendant went into rightful possession of the Brown tract of land under a contract of purchase several years before his deed and plat were made, his possessions and color of title extended to the established boundaries of that tract as shown by the marked lines.' I charge you that, with this modification : If, however, after going into possession of the Brown land, he afterwards took a deed for part and has been claiming under this deed alone, then he is bound by his deed. * * * '12. If Connor's deed calls for Johnson's land as its northern boundary, and gives courses and distances also, his color of title extends no further than Johnson's line, for adjacent boundaries control courses and distances, and when a tract calls for another as a boundary, its lines cannot go beyond the lines of the older grant.' I charge you that." * * *

The requests of each side were handed the other for remarks.

The defendant excepted to his Honor's rulings and charge on the following grounds : that, we respectfully submit, he erred :

(1) In holding and ruling that the plaintiff's deed covered land beyond the Johnson "West 29" line, although her deed called for his said line as a boundary ; and in not ruling, that although the courses and distances laid down in her deed might carry her beyond said line, they must stop at said boundary called for in her deed.

(2) In admitting evidence of "trespass" by the defendant north of said "West 29" line, laid down on his plat as his boundary, and called for by plaintiff's deed as the bounding land.

(3) In refusing to admit the evidence of Bob Foster as to the settlement of the location of this line beyond the Johnson line, on the ground that it was irrelevant ; whereas, the Bush

line being the line called for by Johnson's deed as his boundary, and it being a straight line with undisputed termini, the location of any points between said termini was important in locating said line and was relevant.

(4) In admitting the evidence of W. P. Williams that he showed this corner to Bird for the purpose of locating and defining the limits of the land purchased by him from Brown, when his agency to sell the land for Brown and locate the line was not proven; nor that Brown, who agreed to sell said land to Bird, ever adopted said corner or limited Bird to said point.

(5) In refusing to allow the defendant to testify that the "Bush" line was the true line agreed upon between him and his grantor; that he "bought down to the Bush line," and in ruling that such evidence "would be varying what the plat and deed called for," the error being that the defendant's deed and plat called for the Bush land as his boundary, and this evidence was not "varying what the deed and plat called for," but was locating the land by the boundary called for in his deed and plat.

(6) In allowing as evidence in reply, the testimony of W. P. Williams, Govan Mabry, Turner Cantrell, T. E. Johnson and Calvin Nolan, as to the marks on the line claimed by the plaintiff, and in refusing to allow the defendant to contradict said witnesses.

(7) In charging the jury that "where in an action like this, it is shown by the plaintiff that his or her deed covers a certain tract of land, then such plaintiff is said to have color of title to said land, and it follows as a matter of law and right that such plaintiff is entitled to the use and occupation of such land as against any one who has no title to the same;" and in refusing to modify said charge by adding thereto that this was not the law where the defendant had the possession of the land or the right of possession thereto; the error being that the defendant having proven that Bird and Brown, the true owners of the title, put him in possession of said land in 1873, and that he had held such possession ever

since, such possession was a good defense against one claiming only under color of title not derived from Bird and Brown; and his Honor erred in refusing to modify said charge so as to submit to the jury this defense.

(8) In refusing to modify the plaintiff's second and third requests in the same manner, the error being the same.

(9) In charging that "Proof of title in a third person will not protect one who has no title against a suit for damages on account of a trespass committed on land which is in possession of another under color of title;" and in refusing to modify such charge as requested by the defendant, as follows: "Unless such entry was made with the consent and by the authority of the person holding the title;" the error being that proof of title in a third party, under whom the defendant holds possession, will protect him in such suit for damages.

(10) In limiting the possible defenses of the defendant in this case against damages for entry on the lands claimed by the plaintiff under color of title only, to (1) consent of plaintiff; (2) color of title; or (3) good title in the defendant; and in refusing to charge the jury further, as requested by the defendant, that entry with the consent and by the authority of one holding the title, was also a good defense; and in refusing to submit to the jury such defense also, although sustained by the evidence.

(11) In refusing to further modify said charge as requested by the defendant by adding thereto, that if the defendant also proves that he is in possession under color of title, the burden of proof is on the plaintiff to show that his color of title is the oldest; the error being that such modification was good law, and without it the charge was incomplete and misleading.

(12) In charging at plaintiff's request, that the defendant's color of title must be a deed or plat, or something which defines the extent of the claim, and covers and includes the identical land in dispute; and in refusing to add thereto as requested by the defendant. But in locating the extent of the defendant's color of title you are not limited to the lines

of the plat; but if his plat calls for adjacent land as a boundary, and defendant claimed to that line, his color of title will extend to the adjacent land.

(13) In charging the jury as requested by plaintiff, that the defendant, if he introduces in evidence a deed which he claims covers the land in dispute, then he is bound by the description of the land as given in such deed, and if the description of the land as given in this deed does not include and take in the identical land in dispute, it is not sufficient to justify such entry; and in refusing to add thereto at defendant's request, "But where a deed or plat calls for adjacent land as a boundary, that is a part of the description in the deed, and usually controls the lines on the plat." The error in these two exceptions being as follows: The defendant's deed gave no courses or distances; the plat incorporated in it gave the course as "West," but called also for the Bush land as the boundary, the course of which boundary line as described in the Bush deed was S. 78 1-2 W., but this did not appear on the defendant's deed or plat; and in such case his Honor erred in charging the jury that the defendant's deed or plat must "define the extent of his claim," and must "cover and include, and take in the identical land in dispute;" and in refusing to charge them, also, when requested by defendant, that "you are not limited to the lines of the plat, but when a deed or plat calls for adjacent land as a boundary, that is a part of the description in the deed and usually controls the lines on the plat;" thereby indicating to the jury that they should locate this boundary line by the course, or *visible* description of it as laid down on the Johnson plat; whereas, they should have taken the description of said line from the Bush deed; the law being that where a junior deed calls for an older one as a boundary, the said boundary line must be located under the older grant and not under the description contained in the younger deed.

(14) In charging plaintiff's 5th request, and in refusing to charge in addition thereto, as requested by the defendant, thereby refusing to submit to the jury the defendant's claim

of color of title under Bird in addition to his legal title under Brown.

(15) In charging plaintiff's 7th and 8th exceptions as requested by the plaintiff, and in refusing to modify the same as requested by the defendant.

(16) In charging plaintiff's 9th, 10th, 11th, 12th, 13th, 14th, 15th requests, and in refusing to qualify the same as requested by the defendant, so as to submit to the jury along with them the defenses proven by the defendant.

(17) In charging, as requested by plaintiff, that "in locating a deed a jury should take into consideration the number of acres mentioned, the shape of the plat, as well as other parts of the description contained in the deed, and locate the land covered by it so as to conform to that part of the description which the more certainly shows the intention of the grantor;" and in refusing to charge at defendant's request, "but the number of acres and the shape of the plat are usually the weakest evidence in locating land," the error being that such is good law, and should have been charged when requested.

(18) In refusing to charge, as requested by the defendant, that "the burden of proof is on the plaintiff to show that she has a better right to the possession of the land than the defendant, and unless she proves it by the preponderance of the evidence the plaintiff cannot recover."

(19) In refusing to charge, as requested by the defendant, that "if you find that Brown sold Johnson down to the Bush line, and called for the Bush land on his plat as a boundary, the deed will carry him down to the Bush line, although the course is erroneously marked 'West 29' on the plat. The Bush line must first be located and the Johnson line must be made to conform to it;" and in modifying same at plaintiff's request, so as to read: I charge you that, with this modification, that the marks made by the surveyor controls adjacent boundaries. And in refusing to charge defendant's 4th request, as requested, and in modifying it in the same way, the error being twofold. (1) In assuming and indicating to

the jury as a fact that there were "marks made by the surveyor" which "control the adjacent boundaries," which was both a charge upon the facts and contrary to the facts, the uncontradicted testimony of the defendant being that the surveyor ran on the old Bush line, and there being no testimony that he ever made any marks elsewhere which could "control said adjacent boundary line." And (2) If Brown actually sold Johnson down to the Bush line, and called for the Bush line on his plat as its boundary, the deed will carry him to said line, independent of where the surveyor ran.

(20) In refusing to charge the defendant's 5th request, as requested, and in modifying the same, as requested by the defendant—the error being as pointed out in the above exception, and as indicated in the said request.

(21) In refusing to charge defendant's 6th request, that "in locating a line, a course lain down on a plat is less to be relied upon than the adjacent boundaries and marked lines, especially if the grantor and grantee agree that the course marked on the plat is an error, and that the true line is the adjacent boundary called for on the plat;" and in modifying the same at plaintiff's request, as follows: "That is good law between the grantor and grantee, but as between grantee and a thiry party, the grantee is controlled by the description in his deed," the error being that his Honor again refuses to allow the jury to locate the "adjacent boundary" under the older Bush deed, but holds Johnson down to the erroneous course laid down in his own plat; and (2) if Johnson bought down to the Bush line, and this was the true and lawful line between him and his grantor, Brown (as herein charged), then the plaintiff has no claim or right beyond this line when her deed calls for it as a boundary.

(22) In refusing to charge, as requested by defendant's 8th request, that "if the defendant went into rightful possession of the Brown tract of land under a contract of purchase several years before his deed and plat were made, his possession and color of title extended to the established boundaries of that tract as shown by the marked lines;" and in modify-

ing the same at plaintiff's request so as to read, "if, however, after going into possession of the Brown land, he afterward took a deed for part, and has been claiming under this deed alone, then he is bound by his deed;" the error being in refusing to charge defendant's request so as clearly to submit to the jury his claim of color of title under Bird, and in so modifying it as to indicate to the jury that the defendant was claiming under his deed alone; whereas, neither in his pleading or proof does he restrict himself to a claim under said deed, but pleads broadly that he is the owner of said land down to the Bush line; and produces proof of title under Brown's deed, and also proof of possession of Bird for twenty-three years.

(23) That his Honor erred in his charge, in that, when taken as a whole, he restricted the defendant to the lines as described on his plat, although said plat also called for the Bush land as a boundary, and in not instructing the jury that the said Bush line must be located under the description of it in the Bush deed; and that when so located the defendant owned to it, in consequence of which the jury were misled, and found against the defendant.

*Messrs. Nichols & Jones,* for appellant, cite: *The adjacent well marked boundary controlled the unmarked course as laid down on the plat:* 1 McC., 232; 3 McC., 222; Harp., 454; 2 Brev., 442; Rice, 373; 14 S. C., 553; 53 S. C., 93. *When both a boundary and a course are called for in a deed, it is not varying the deed to prove that vendor sold to boundary:* 1 Brev., 545; 2 Bail., 180; 2 Bay, 516. *If defendant in rightful possession from rightful owners, plaintiff cannot prevail:* Rice, 375; 14 S. C., 549; 2 Rich., 629; 18 S. C., 552.

*Messrs. Duncan & Sanders,* contra, cite: *Plaintiff in possession under color of title was entitled to recover against defendant having no title:* Dud., 340; 8 Rich., 321; 3 Strob., 471. *One having perfect title cannot bring action like this against one in possession under color of title:* 4 Rich., 105.

*As to governing principles in locating boundaries:* 8 Rich., 315; 9 Rich., 50; 1 Strob., 146; 2 McC., 240; 3 Rich., 5; 2 N. & McC., 69; 1 Rich., 140; 1 McC., 167; 14 S. C., 91; 53 S. C., 91. *Boundaries set out in deed cannot be altered by parol:* 3 Rich., 129; 1 McM., 467; 2 Spear, 654.

November 27, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This is the second appeal in this case—the first being reported in 53 S. C., 90; and, as the pleadings are not set out in the "Case," in order to ascertain what was the nature of the case, we have looked to the statement made by Mr. Justice Gary, who delivered the opinion of this Court under the former appeal, and to the general statement made in the "Case" prepared for argument here. From these sources we learn that the action was for trespass *quare clausum fregit* upon a certain parcel of land of which the plaintiff alleged she was in possession under a paper title, and that, at sundry times before the commencement of this action, the defendant unlawfully entered upon said land and committed divers trespasses, for which she claimed damages. The defendant in his answer denied all the allegations of the complaint, and claimed that he was the owner of the land upon which he was charged with trespassing.

From the judgment entered upon the verdict in favor of the plaintiff at the first trial, the defendant took an appeal based upon ten exceptions, all of which were overruled except the second exception, which was very properly sustained, as the Circuit Judge, who presided at the first trial, had instructed the jury "that courses and distances on the plat control as against the boundary of an adjacent landowner called for on said plat;" and for that error the judgment was reversed and the case was remanded. The case, therefore, again came on for trial before his Honor, Judge Watts, and a jury, when a verdict was again found for the plaintiff, and judgment having been entered on such verdict, the defendant again appeals, basing his appeal upon the twenty-

three exceptions set out in the record, which should be incorporated by the reporter in his report of the case, together with the charge of the Circuit Judge.

Before considering the questions presented by this appeal we deem it necessary to make the following preliminary observations in order that we may have a clear view of such questions: It must be kept in mind that this is an action of trespass *quare clausum fregit,* and *not* an action of trespass to try titles; and that there is this fundamental difference between these two actions, viz: that in the former the object being to recover damages for trespass upon the possession of the land, it is *not* necessary for the plaintiff to show title himself, but possession merely; while in the latter, the plaintiff, in order to recover, must show title in himself, and must recover upon the strength of his own title and not upon the weakness of his adversary's title.    Accordingly, in an action of trespass *quare clausum fregit,* when the plaintiff proves that he is in possession of a given tract of land and that defendant has trespassed upon it, he is entitled to recover, unless the defendant shows that he has title to the land himself—*not* that the title is in some third person, as would be sufficient to protect him if the action were an action of trespass to try titles, or that he entered upon the land and did the acts complained of as trespasses, by the permission or under a license from the true owner of the land.    If, therefore, the plaintiff in this case has satisfied the jury (and we must assume from the verdict that she has) that she was in the actual occupancy of a tract of land, claiming the whole of said tract under color of title, and that the defendant had committed trespasses within the lines of said tract, then the plaintiff would be entitled to recover, unless the defendant had satisfied the jury that he had good title, in himself, to the land upon which the alleged trespasses were committed, or that he did the acts complained of as trespasses by the permission or under a license from the real owner of the land.    Inasmuch, however, as the defendant did not plead such permission or license from the

true owner of the land, as a defense, and as there was no
evidence to that effect, we may dismiss that defense from
further consideration.    The defense really set up by
the defendant was that he had the legal title to the
land in dispute under a deed from the former owner,
one Brown, which antedated the deed under which the plain-
tiff claimed, which he claimed, if properly located, would
cover the land upon which the alleged trespasses were com-
mitted.    So that the real question in the case was as to the
proper location of the deed under which the defendant
claimed.    It is true, that the defendant also undertook to
show that he went into possession in 1873 of the land under
a contract to purchase from one Bird, who was in possession
under a contract to purchase from the former owner, Brown;
but Bird being unable to comply with his contract, he agreed
to sell that portion of the land adjoining the plaintiff's land
to the defendant, who took his title direct from Brown, as
Bird had never received any title; and it is under that title
that the defendant claims, as he himself says in his testimony.
We may, therefore, dismiss from further consideration any
claim that may have been set up, under the defendant's con-
tract to purchase from Bird, as he never did and never could
have acquired any title from Bird, who never had any legal
title himself; for a party who goes into possession of lands
under a contract to purchase can not acquire title by adverse
possession (*Richardson* v. *Broughton,* 2 N. & McC., 417;
*Richards* v. *McKie,* Harp. Eq., 184).    So that, as we have
said, the real question in the case was as to the true location
of the land conveyed to the defendant by Brown.    That deed
describes the land therein conveyed as: "all that tract or par-
cel of land, containing 118 acres, situated in Spartanburg
County, on both sides of Boiling Springs Branch, waters of
Shoaly Creek, of Pacolet River, bounded by lands of Turner
Cantrell, T. Daves and others, which is more fully repre-
sented by the above plat," and the plat is annexed to the deed.
Although the Bush land is not represented *in the deed itself,*
as one of the boundaries of the land conveyed, yet it is laid

down in the plat as lying to the south of the land conveyed. There was a conflict of testimony as to the location of the land conveyed to the defendant by Brown, involving a conflict of testimony as to the correct location of the Bush line, and the verdict of the jury shows that they solved this question in favor of the plaintiff; and hence the verdict must stand unless the jury were erroneously instructed upon some materal matter of law involved in such question. For while it is true that a question of location is largely a question of evidence, and cannot, therefore, be reduced to any definite or fixed rule (*Coats* v. *Mathews*, 2 N. & McC., 99), yet there are certain general rules of location which, from a very early period in our judicial history (*Bradford* v. *Pitts*, 2 M. Con. Rep., 115), have been recognized by our Courts, down to the decision under the former appeal in this case (53 S. C., 90), where these rules are thus stated: "In locating lands the following rules are resorted to, and, generally, in the order stated: 1st, natural boundaries; 2d, artificial marks; 3d, adjacent boundaries, and 4th, courses and distances." But in every one of the cases recognizing these general rules, which we have consulted, the Courts have invariably also recognized the doctrine that these general rules are not inflexible, but may be modified by the circumstances of the case. Without going into any detailed consideration of the numerous exceptions to the Judge's charge, it seems to us that in his charge he kept strictly within the principles of law above laid down. He distinctly recognized the general rules of location above referred to; and he did not even modify these general rules, which, as we have seen, is permissible where the circumstances of a given case call for such modification. For when asked to charge that in locating the defendant's land the jury were bound to go to the Bush line, the adjacent boundary represented on defendant's plat, the Circuit Judge instructed the jury that this was so, unless the marks made by the surveyor required a different location; and this was in accordance with the general rule, which, as we have seen, places

artificial marks, which means the marks made on the line by the surveyor, above adjacent boundaries.    In this case, the Circuit Judge never did instruct the jury, as the Judge who presided at the former trial had done, that the courses and distances on the plat would control as against the adjacent boundaries.    On the contrary, the Circuit Judge, in this case, distinctly charged the defendant's twelfth request, as follows: "If Connor's deed calls for Johnson's land as its northern boundary, and gives courses and distances also, his color of title extends no further than Johnson's line, for adjacent boundaries control courses and distances; and when a tract calls for another as a boundary, its lines cannot go beyond the lines of the older grant."    It seems to us, therefore, that none of the exceptions to the Judge's charge can be sustained; and if the defendant had any cause of complaint at all, it is of the findings of fact by the jury, and not of the Judge's charge.

We will next take up the exceptions imputing error in the rulings as to the admissibility of testimony.    The second exception imputes error to the Circuit Judge in admitting testimony as to trespass north of the line laid down on the plat attached to the defendant's deed as running "West 29."    In the first place, we do not find that any ruling was made as to any such testimony; and even if it had been, there would have been no error; for that line being laid down on defendant's plat as his northern line, the question as to whether it was the correct line or not, depended upon the facts, to a certain degree, at least, and the Circuit Judge had no right to determine these facts.    If that line proved to be the correct line, then the testimony objected to would, unquestionably, have been admissible. · If, however, that line did not prove to be the correct line, then the defendant suffered no harm, for he certainly could not be held liable for trespassing upon any land except it proved to be the plaintiff's.

As to the third exception, it is clearly untenable, for the matter to which Foster's testimony related was *res inter alios*

*acta.* If the plaintiff saw fit to compromise a dispute as to the line between herself and Foster, we are unable to perceive what relevancy that had to the present controversy between the plaintiff and defendant. It is not pretended that there was any privity between Foster and the defendant.

The fourth exception, imputing error to the Circuit Judge in allowing the witness, Williams, to testify that he showed a certain corner to Bird for the purpose of locating and defining the limits of the land which Bird had contracted to purchase from Brown, cannot be sustained.

Williams was a competent witness to prove that he was the agent of Brown (*Covington* v. *Bussey,* 4 McC., 412; *Black* v. *Goodman,* 1 Bail., 201; Greenlf. on Ev., 416; 2 Greenlf., sec. 63), and he did prove it. While it is true that agency cannot be proved by the *declarations* of the professed agent, yet we see no reason why one who is alleged to be the agent of another may not be allowed to prove, by his own direct testimony, that he had been appointed Brown's agent *by parol.* Of course, if the appointment had been made in writing, such writing would have been the best evidence. And when the Circuit Judge offered to allow the defendant to examine Brown for the purpose of contradicting the statement of Williams, and he was so examined, it seems to us that the objection to the testimony of Williams was left without anything to support it.

The fifth exception, imputing error in refusing to allow the defendant to testify "that the Bush line was the true line agreed upon between him and his grantor; that he bought down to the Bush line," must be overruled, if for no other reason than that the "Case" shows that the defendant was allowed so to testify, and such testimony was not stricken out, and no motion to that effect was ever made. But, in addition to this, we think the testimony was incompetent anyhow, in this case. The "Case" shows that when the defendant was delivering this testimony, he was speaking of the land of which he was put in possession *under*

*his contract to purchase from Bird,* and, as we have seen, that contract had nothing to do with this case, for the defendant subsequently took a deed from Brown, and he himself testifies that he claimed title, which he had set up as a defense, *under that deed;* and he did not, and, as we have seen, he could not, have claimed title by possession under his contract to purchase from Bird. So that the real question was the true location of the deed from Brown to the defendant, under which he claimed; and the question as to what were the limits of the land which he contracted to purchase from Bird, was an immaterial inquiry. So that in any view that may be taken, there is nothing to support the exception.

The sixth exception imputes error to the Circuit Judge in allowing the plaintiff, in reply, to offer the testimony of Williams, Mabry, Cantrell, Johnson and Nolen, as to the marks on the line claimed by the plaintiff; and in refusing to allow the defendant to contradict said witnesses. Thus there are two questions presented by this exception. 1st. Whether there was error in receiving the testimony. 2d. Whether there was error in refusing to allow the defendant to contradict said witnesses. As to the first of these questions, we think the testimony clearly competent in reply. The defendant had offered testimony tending to show that there were no old marks on the line referred to, and the testimony in question was offered to show that there were such marks on the said line; and it was, therefore, manifestly competent. As to the second of these questions, it is sufficient to say that we find nothing in the "Case" showing that the defendant either asked or was refused the privilege of putting up testimony to contradict the testimony of these witnesses as to whether there were any old marks on the line claimed by plaintiff. We do find that counsel asked and was allowed to examine Brown to contradict Williams as to his ever having appointed him his agent to show the lines of his land. And we also find that counsel for defendant stated, at the close of the testimony: "We have two witnesses—Mr. Aycock and Mr. Bob Foster—to put on the stand and contra-

dict Mr. Billy Williams as to what he told him;" to which the Circuit Judge responded as follows: "No; I can't go any further." But turning to the testimony of Williams, we find that the witnesses named were not intended to contradict Williams as to the old marks on the line claimed by plaintiff, but to contradict him as to something that it was claimed that he had said in reference to an altogether different line. The sixth exception must likewise be overruled.

Referring to the first exception, which was overlooked in considering the other exceptions to the Judge's charge, we have to say that we are unable to find where the Judge made any such ruling as that imputed to him in the first exception; and that he could not have ruled, as it is claimed he should have done, in that exception without invading the province of the jury. The Circuit Judge had no right to instruct the jury, as matter of law, how the land claimed by the plaintiff, or the land claimed by defendant, should be located, as that was a mixed question of law and fact. All that he could do, properly, was to lay down the principles of law applicable to the case, and leave the jury to apply those rules to the facts as found by them—and this he did do. The first exception must be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.