9004

HOLDEN *ET AL.* v. CANTRELL *ET AL.*

(84 S. E. 826.)

BOUNDARIES.   LOCATION.   EVIDENCE.   TRIAL.   ARGUMENT.   CHARGE.
ISSUES.   APPEAL AND ERROR.   EXCEPTIONS.

1. EXCEPTIONS—SETTING FORTH OBJECTIONS—MOTION FOR NEW TRIAL
—RECORD.—Under rule 5 exceptions should state the grounds of the
motion for new trial and the requests to charge, or so much as appel-
lant wishes to have the Court consider, and then state in the record
that the exceptions correctly stated the grounds of motion and
requests to charge.

2. APPEAL AND ERROR—REVIEW—STATEMENT OF FACTS.—The Court will
not consider statements of facts appearing only in the exceptions.

3. EXCEPTIONS, BILL OF—INCORPORATION OF TESTIMONY.—Exceptions are
objectionable when they incorporate at length the testimony to which
objection is made, and are argumentative in form.

4. BOUNDARIES—EVIDENCE—SURVIVOR.—In a boundary suit, testimony of
plaintiff's surveyor that, if the boundary line claimed by defendant
were projected, it would cut off property concededly belonging to
plaintiff, is admissible.

5. BOUNDARIES — EVIDENCE — PHYSICAL OBJECTS OUTSIDE DISPUTED GROUND.—Where, in a boundary suit, plaintiff testifies as to physical objects outside the land in dispute, which was in form a triangle, to show the true boundary line, and a plat agreed upon by the surveyors as correctly representing the lines as claimed by the respective parties, and showing the physical objects testified to by plaintiff, testimony of the surveyors as to the location of the physical objects was properly received.

6. BOUNDARIES—CONFLICTING ELEMENTS—QUANTITY.—Though quantity, as a matter of description, is ordinarily one of the lowest in the scale of importance, there may be circumstances in which it would be controlling.

7. BOUNDARIES—EVIDENCE—ACREAGE.—In an action involving the boundary line of two tracts of land, which were part of an original tract containing three tracts, testimony as to the acreage of the three tracts is not error.

8. BOUNDARIES—EVIDENCE—SURVEYORS.—In a boundary case, admission of testimony of surveyor that he could not run a straight line 52 chains long through hilly woodland without aid of an instrument is not error, as it was a fact which needed no testimony to prove it.

9. TRIAL—ARGUMENT OF COUNSEL—TESTIMONY OF WITNESSES IN OTHER SUIT.—Where witnesses in a boundary suit had been witnesses in a former suit between the same parties, references made in examination of witnesses and argument of counsel to the other suit, mostly as to whether the witness had or had not gone over the disputed line before or after that suit, the result not being mentioned, were not error.

10. APPEAL AND ERROR—RECORD—ARGUMENT OF COUNSEL.—An assignment of error to the argument of counsel in commenting on absence of a pencil sketch cannot be considered, when the record does not show what the comment was, that objection was taken to it, or that the Court made or was requested to make a ruling on it.

11. APPEAL AND ERROR—RECORD—PUNITIVE DAMAGES.—Under Circuit Court rule 77 the point that there was no evidence to support a verdict for punitive damages is not reviewable, where the record does not show that a motion for nonsuit or direction of the verdict on that issue was made.

12. EVIDENCE—DECLARATIONS—FORMER OWNER.—In a boundary suit, the declaratons of a former owner in possession, accompanying and explaining acts of ownership, and tending to show the character and extent of his possession, are admissible.

13. WITNESSES—TRANSACTIONS WITH DECEDENT.—In a boundary suit, testimony of a former owner as to a conversation of a third person with his father, then the owner of the land, is not obnoxious to Code Civ. Proc. 1912, sec. 438, as it was not a transaction between the witness and the deceased, and it was not against a defendant who

sustained any of the relations to the deceased mentioned in the statute.

14. APPEAL AND ERROR—BOUNDARIES—INSTRUCTIONS—RULES FOR DETERMINING BOUNDARY.—In a boundary suit, instructions stating the rules laid down for guidance of juries in such cases should be given when requested, and the failure to give such instructions is reversible error.

Before DEVORE, J., Walhalla, November, 1912. Reversed.

Action by Mrs. Alice M. Holden, John M. Holden, Elisha F. Holden and William Bryan Holden, by their guardian *ad litem,* Mrs. Alice M. Holden, plaintiffs-respondents, against Levi R. Cantrell, Joseph Cantrell and James Cantrell, defendants-appellants.

From a judgment for plaintiff, defendants appeal upon the following exceptions:

1. It is respectfully submitted that it was error to admit in evidence a plat of one surveyor and allow him to explain numerous marks not ascertained on any joint survey where the other party was represented by a surveyor, and representations not affecting the land in dispute.

2. It is respectfully submitted that it was error to allow the witness, J. H. Wigington, to testify to the dotted line, representing an unmarked line claimed by the plaintiff and not appearing from any evidence found on the land, and as to a representation of a field not on any part of the land in dispute; and as to a house place, not on any part of the land in dispute.

3. It was error to allow the witness, Wigington, to testify as to area of the Alexander tract of land, as it is an entirely different tract of land and not involved in this suit.

4. It was error to allow the witness, Wigington, to state that he could not run a straight line fifty-two chains and twenty chains long without the aid of an instrument.

5. It was error to allow the witness, Wigington, to answer the question, "If the conditional line passed by those three points, the post oak on the point of the ridge, by the shoals on the branch and the bank of the road at the old Indian boundary line, how would you have located that line?" as there was no evidence of any. such line called for by any of the papers and no evidence of such line on the land, and it was purely speculative.

6. It was error to allow the witness, Wigington, to answer the question, "I wish you would point out on your plat where the Irvine line would go if extended clear across the survey on the same course and distance?" because no part of such line was on or touching the land in dispute beyond the pine corner.

7. It was error to allow the plaintiffs' attorney to ask witness in reference to a suit between the plaintiffs and Alexander, as it would necessarily tend to prejudice the jury by the result in that case.

8. It was error for the Circuit Judge to allow the witness, B. F. Holden, to testify (folio 223) * * * "I asked him whereabouts the line lay above what ·is called the Crow house, being a crossing way on the branch, and he said some few yards below the Crow house above that branch, and that is the question that I asked him and that is what he told me, he didn't say a question of yards, but he said a right smart piece above the little house that was called the Crow house, below the old ford on the branch old crossing place," because this testimony is (a) purely hearsay; (b) is a self-serving declaration, (c) and does not follow within the class of verbal acts; (d) it is against the interest of Levi Cantrell, who is now defending the title as assignee or purchaser of Moses Cantrell, deceased, who was the owner at the time the witness speaks of.

9. It was error to admit testimony of Mrs. Mary Holden as to where she had always heard that the line ran, and as

to old fields entirely outside of the land in dispute, the same being purely hearsay and irrelevant. -

10. It was error to allow the witness, William Holden, to state "old man Moses Cantrell and my father was there where the house was built and they said the line was right along the ridge on the west side of the house not more than one hundred yards from the house to where the line ran, the line was just outside the fence, the fence was an old rotten down fence, and we patched if up until the fence law. The line between Mr. Cantrell and my father ran from the post oak on the ridge north and south and crossed the branch about that shoal or a little above it, there somewhere.  I only know what they said about it.". * * * "This tree and ridge was always recognized by Mr. Cantrell and my father as the dividing line between the two places.  Going from the shoal towards Mr. Talley's land I always heard the Holdens say, and Mr. Cantrell, too, the line ran towards Talley's till it hit the old boundary line, and then ran the Indian boundary line east across the field by a poplar in the bottom; the line cornered on the boundary line near the road.  The ridge that my father and Mr. Cantrell spoke of as containing the marked tree ran with reference to the branch north and south and pointed in towards the branch.  I remember a clearing made by my uncle, Frank Holden, it was a little west of the fence on the outside and north of the Crow house, it was his land then, B. F. Holden," as this testimony is objectionable as being (a) a statement of William Holden, one of the previous owners of the Holden tract of land, in his own interest or in the interest of his title thereto; (b) he undertakes to give a communication or transaction occurring in the presence of the witness and Moses Cantrell, a former owner of the tract of land now owned by Levi Cantrell, now deceased; (c) it is purely hearsay and a declaration in the interest of the party making the statement (folios 685, 688, 689, 698).

11. It was error to admit the testimony of Staten Cantrell as to what Josiah Holden said in reference to being dissatisfied with the location of the Irvine line, he being the owner of the tract of land now claimed by the plaintiffs at that time and since deceased, the plaintiffs being assignees of said Holden.

12. It was error to admit the testimony of Wade Lusk as to statements made by Josiah Holden that the Irvine line ran in on him and that it was his land, he being a former owner and the plaintiffs as assignees of the tract of land claimed by plaintiffs.

13. It was error to admit the testimony of J. L. Talley as to what Josiah Holden said about claiming the land, he being a former owner, and the plaintiffs claiming the same tract, as assignees, as they were self-serving.

14. It was error to admit the testimony of Fred. Holden that his brother, Josiah Holden, since deceased, told him the post oak tree was a line tree, the same being hearsay and incompetent under section 439.

15. It was error to allow the plaintiffs' attorney to persist in asking J. C. Shockley and other witnesses about the Alexander-Holden law suit as tending to prejudice the minds of the jury by the result in that case.

16. It was error not to allow the defendant, James Cantrell, to state what Josiah Holden said and did in respect to the Irvine line while on the premises pointing out the line (see folios 627-8), after the plaintiff had offered testimony on this point, after the witness, Staten Cantrell, was allowed to testify (folio 262): "Did he (referring to Josiah Holden) say whether or not he was willing to abide by that line? A. No, sir; he seemed to be dissatisfied about it; said he wasn't satisfied." And after allowing the witness, J L. Talley, to state (folio 289): "Did you ever have any conversation with him (referring to Josiah Holden, deceased) while he was in possession or claiming the land where Mrs. Holden now lives with reference to this line or

any conversation, and if so, please state what the conversation was? A. Yes, sir; I heard Mr. Holden say that he claimed that land up there," and after allowing the witness, Wade Lusk, to testify (folio 275): "Q. Did you ever, at any time, go out there in the direction of that Irvine corner with him (referring to Josiah Holden, deceased)? A. I passed by it. Q. Do you know whether or not he was claiming that land as his own at that time? A. He told me himself that he did. Q. What, if anything, did Mr. Holden say to you about the Irvine corner or Irvine line? A. He said that it was his land, that they run in on him," and after the witness, Fred. Holden, had been allowed to testify (folio 320): "Q. What is it your brother (referring to Josiah Holden, deceased) said about that post oak? A. He just said that was the line tree and showed it to me," because the plaintiffs had opened the sealed mouth of Josiah Holden and thereby made all other persons competent witnesses in relation to such transaction or communication.

17. It was error to allow counsel for the plaintiff to comment on the absence of the plat by Irvine and say that it must contain something that would be against the defendants or they would have produced it, when the record showed that no such plat was in the possession of the defendants or their attorney, but disappeared during a former trial of this case in the courthouse, and was originally produced by the defendants.

18. It was error for the Circuit Judge to refuse a new trial to the defendants upon the grounds stated in the record, as follows (folios 728-734):

(1) That it was error to admit the testimony of the witnesses, William Holden, B. F. Holden, Mrs. Mary Holden, Staten Cantrell, as to declarations of former owners and of the owner of the adjacent tract now held by Cantrell, who was then deceased, and B. F. Holden and William Holden, having previously held the title or claimed title to the property about which the controversy is.

(2) That it was error not to allow the defendant, James Cantrell, to testify to what Josiah Holden did and said after the witnesses, Staten Cantrell and Mrs. Mary Holden, had already stated what he had said in reference to the Irvine line mentioned in the testimony and on the plats, while on the premises pointing out the line to which he claimed.

(3) That there was no evidence of the plaintiffs having or claiming exclusive adverse possession for ten years before the commencement of this action; there is no evidence of the plaintiffs or any under or through whom they claim having or claiming exclusive adverse possession for twenty years before the commencement of this action of any part of the land in dispute.

(4) That all of the testimony showed that the dividing line, which is called the Irvine line, was well marked and established for eighty years or more.

(5) That the verdict of the jury was against the great weight of the evidence and without evidence to support it.

(6) That there was no evidence of wilfulness that would support punitive damages, as the defendants, according to all of the testimony in the case, did what is alleged as a trespass under an honest claim of right and without any show of force.

(7) That it was error to allow counsel to comment on the absence of a plat and state that it must contain something that would be against the defendants or they would have produced it, when the record showed that no such plat was in the possession of the defendant or their attorney, but disappeared during a former trial of this case in the courthouse, and was originally produced by the defendants. The Judge declined to hear counsel upon any of the grounds except on the question of possession. The motion was refused. The Judge granted the plaintiffs a perpetual injunction against the defendants to the line contended for by the plaintiffs.

19. It was error for the trial Judge to refuse to charge the defendants' requests to charge as follows (folios 651-659) :

(1) Where the lines of a tract of land have been run, and acquiesced in, and can be found, they constitute the true boundaries, which must not be departed from or made to yield to any less certain and definite matter of description or identity.    5 Cyc., 914.

(2) Line actually surveyed and marked and capable of identification will, according to well settled principles of law, control calls for courses and distances in the determination and location of a boundary line, likewise the call for quantity or a certain number of acres must yield to marked lines.    5 Cyc., 915.

(3) A statement of the quantity of land supposed to be conveyed and inserted in a deed by way of description, must yield to natural or permanent objects called for in the conveyance.    5 Cyc., 920; 1 Hill, 12; 2 Bay, 515; 17 S. C., 129.

(4) Lines actually run and marked on the ground are the best evidence of the true location of the survey.    29 S. C. 421, 7 S. C. 814.

(5) The settled rule is, that monuments, whether natural objects or artificial marks, are allowed to dominate courses and distances.    3 Am. St. Rep. 718, 83 Ala. 246, 3 So. 519.

(6) Where the owners have a fence where they consider the true line, and each claiming only to the true line, wherever that may be, they are not bound by the location of the fence, but must conform to the true line when it is ascertained.    32 Am. St. Rep. 606; 108 Mo. App. 311, 18 S. W. 911.

(7) If the boundary between contiguous lands is uncertain the owners of the adjoining tracts may agree upon a certain line as a boundary and such boundary is binding upon them and their successors in title, especially so when it is followed up by actual occupation.    39 Am. St. 139, 33 Fla. 261, 14 So. 805.

(8) Where parties by mutual agreement, and for that express purpose meet and fix a boundary line, and thereafter acquiesce in the line, such line will be considered the true line between them, where there is no fraud or misrepresentation.    11 Am. St. Rep. 589, 67 Mich. 459, 35 N. W. 152.

. (9) A boundary line, whose commencement is given, must be continued in the same direction, if possible, unless the contrary be shown.    2 Brev., 422; Harp., 454.

(10) A preponderance of the evidence is all that is necessary to establish a boundary line, and that may be by either direct or circumstantial evidence.

(11) When adjoining lands are called for in a conveyance the true boundary of the adjoining tract is the true dividing line between the tract undertaken to be conveyed and the adjoining tract; and in charging "I have been requested to charge you some requests here submitted by the defendant, all of which I refuse, because that all charges on the facts in the case, and I cannot charge you about questions of facts (folio 723), as it is respectfully submitted as the request to charge contained sound propositions of law and instructions and rules of law by which the jury should be guided in finding the facts."

20. It was error for the Judge to refuse the motion for a new trial on the ground that there is no testimony to warrant or support a verdict for punitive damages, as there was no threat or show of force or wilfulness.

*Mr. J. R. Earle,* for appellant, cites: *As to Code Civil Proc.,* sec. 438; 47 S. C. 488.

*Mr. E. L. Herndon,* for respondent, cites: *As to admissibility of testimony:* 47 S. C. 488, 492; 53 S. C. 18, 22; 88 S. C. 283; 55 S. C. 510; 56 S. E. 385, 390; 32 S. E. 359.

February 25, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is the second appeal in this action for damages for trespass.   See 88 S. C. 281, 70 S. E. 815.   Plaintiff and defendant, Levi Cantrell, own adjacent lands—parts of the same original tract which was a square mile, and was divided into three tracts.   Plaintiff's land extends entirely across the eastern side of the square.   The western side is divided into two tracts (owned by Alexander and Cantrell) by an irregular line extending from a point on the western side of the square to the plaintiff's line.   The description in the mesne conveyance are very indefinite, the calls being mostly for artificial marks, most of which have been obliterated by time, and but few courses and distances are given.   Hence, the difficulty in locating the dividing line between plaintiff and defendant, which is the issue in the case.   The land in dispute—18 acres—lies within a triangle made by lines A, B and D on the plat made by the surveyors.   Lines A and B meet at the apex, an admitted corner between plaintiff and Cantrell on the northwest line of the original tract.   D is the base of the triangle and is a continuation of the eastern end of the line between Cantrell and Alexander.   Plaintiff claims to line A and defendant to line B.

In 1880, Gen. Irvine, a surveyor, surveyed and platted the lands now owned by defendant, Cantrell, then belonging to the estate of Moses Cantrell.   This survey was *ex parte,* and was made for the purpose of partitioning the lands of the estate of Moses Cantrell.   The testimony is conflicting as to whether lines B and D were old marked lines when Irvine made his survey, or were then for the first time established and marked by him.   At the first trial a copy or pencil sketch of Ervin's plat was produced by defendant and put in evidence; but it was lost or misplaced and was not produced at the second trial.   Line A extends from the admitted corner S. 32 E. by a post oak, admittedly on the

line between Cantrell and Alexander, and thence S. 30 E. by a shoal on a branch to the southeast line of the original tract. Line B extends from the admitted corner S. 42 E. to its intersection with line D at a corner either found or made by Ervin and marked on the plat, "Pine stump—Ervin."

Plaintiff's testimony tended to show that she and her predecessors in title always claimed and exercised acts of ownership to line A, and that line B was first run and marked by Ervin, and that it was never agreed to or acquiesced in by her, or her grantors, as the true line. Defendant's testimony tended to show that he and his predecessors in title claimed and exercised acts of ownership to line B, and that lines B and D were evidenced by old marks, when Ervin made his survey, and that plaintiff's predecessors in title, or at least some of them, acquiesced in line B, which is referred to in the testimony as the Ervin line, as the true boundary.

Respondent objects to the consideration of a number of appellant's exceptions on the ground that they are too general. Exceptions 18 and 19, before they were amended by leave of this Court, were defective in form, in that 1, 2 they merely referred to the grounds of the motion for a new trial made on Circuit and the defendant's requests to charge, which are set out elsewhere in the record, and not in the exceptions. Under rule 5, these exceptions would not have been considered in that form. *Fowler* v. *Harrison,* 64 S. C. 313, 42 S. E. 159. This does not mean that the grounds of the motion and the requests should have been set out twice in the record. They should not. The correct method would have been to incorporate them, or so much of them, or so much of the matter therein contained, in the exceptions as appellant wished to have this Court consider, and then state in the record that the exceptions correctly stated the grounds of motion and requests to charge. *Standford* v. *Cudd,* 93 S. C. 367, 76 S. E. 986.

But the record should have contained the statement last mentioned, for this Court will not consider statements of fact appearing only in the exceptions. The other exceptions are not obnoxious to the objection made. Most of them are commendably concise and specific, and might have been made even more so without being objectionable.

3    Some of them, as amended, are objectionable, because they incorporate at length the testimony to which objection was made, and are argumentative in form, making them needlessly long and complicated. There are entirely too many exceptions. Many of them raise the same question. In *Simpson* v. *Cox,* 95 S. C. 382, 79 S. E. 102, we indicated the manner in which exceptions should be prepared.

The parties agreed upon a survey, each side appointing a surveyor. While the surveyors do not agree in their testimony as to which is the true line, they concur in the plat in evidence, and agree that it correctly represents

4, 5  the lines contended for by plaintiff and defendant, respectively, and the physical objects represented thereon. There is shown on this plat at the base of the triangle, but outside of it, an old field, in which is the site of a house, known as the Crow house, also the line of an old fence which enclosed the field and house and a part of the land in dispute, running across the base of the triangle. Plaintiff's testimony tended to show that this house was built and the field cleared and fenced by her predecessors in title more than fifty years ago, and that she and they have had possession thereof ever since. The plat also shows a shoal on a branch outside of the triangle, but near the field. As heretofore stated, plaintiff's testimony tended to show that she and her predecessors in title claimed to line A, which crossed the branch at the shoal. There was, therefore, no error in allowing plaintiff's surveyor to testify to the location of these physical objects, even though some of them were not on the land in dispute. Nor was there

error in allowing him to testify that if line B (claimed by defendant) were projected from the "pine stump—Ervin," at the base of the triangle, it would cut off from plaintiff's land not only the Crow house and a part of the old field enclosed by the fence, but also other fields which have been in possession of her and her grantors for more than fifty years, as to most of which her title is undisputed. This testimony was relevant, because it tended to prove that line B was not the true boundary. The correct location of disputed lines is often determined by reference to physical objects not directly on them, or within the disputed area.

For the same reason there was no error in allowing plaintiff's surveyor to testify to the acreage of the three tracts into which the original tract had been cut, as claimed by the respective owners, even though one of them was not involved in this litigation. While quantity as matter of description is ordinarily one of the lowest in the scale of importance, yet there may be circumstances in which it would be entitled to controlling influence. At any rate, the plaintiff was entitled to have the jury consider it, and give it such weight as they deemed it worthy of.

We see no error in allowing plaintiff's surveyor testify that he could not run a straight line fifty-two chains long through hilly woodland without the aid of an instrument, a fact which needed no testimony to prove it. This was brought out presumably to explain the slight bend in the line claimed by plaintiff at the post oak where it intersected the line between Cantrell and Alexander.

The record affords no foundation for the assignment of error in allowing reference to be made in the examination of witnesses and in the argument of counsel to the suit between plaintiff and Alexander, which presumably involved the location of the line between them. Some of the witnesses who testified in that suit also testified in this. Reference to their testimony in that case,

and as to when they had gone over the disputed lines in this case, or had done other things, whether before or after the trial of that case, was natural and not improper or prejudicial, especially as nothing was said about what was the result in that case.

Nor does the record disclose any foundation for the assignment of error in allowing plaintiff's counsel to comment upon the absence of the pencil sketch of the Ervin plat at the second trial. It does not appear what the comment was, or that any objection was made to it, or that the Judge made, or was requested to make, any ruling upon the subject.

Under rule 77 of the Circuit Court the point is not available to defendants that there was no evidence to support a verdict for punitive damages, as it does not appear in the record that a motion for nonsuit or direction of the verdict on that issue was made.

There was no error in admitting evidence of the declarations of former owners of plaintiff's land, made while they were in possession thereof, accompanying and explaining acts of ownership and tending to show the character and extent of their possession. *Turpin* v. *Brannon,* 14 S. C. L. (3 McC.) 261; *Martin* v. *Simpson,* 15 S. C. L. (4 McC.) 262; *Leger* v. *Doyle,* 45 S. C. L. (11 Rich.) 109; *Ellen* v. *Ellen,* 16 S. C. 132; *Levi* v. *Gardner,* 53 S. C. 24, 30 S. E. 617; *Holden* v. *Cantrell,* 88 S. C. 283, 70 S. E. 815.

There was no error in admitting the testimony of William Holden, a former owner of plaintiff's land, as to a conversation had at the Crow house between his father, then the owner of plaintiff's land, and Moses Cantrell, then the owner of defendant's land, in which they said where the line was. The testimony was not obnoxious to section 438 of the Code of procedure for two reasons: 1. It was not as to a transaction or communication between the witness and the deceased, Mr. Cantrell.

The conversation was between the father of the witness and Mr. Cantrell. 2. It was not against a defendant who sustained any of the relations to the deceased mentioned in the statute. *Jones* v. *Plunkett,* 9 S. C. 392; *Cantey* v. *Whitaker,* 17 S. C. 527; *Brice* v. *Miller,* 35 S. C. 537, 15 S. E. 272; *Rapley* v. *Klugh,* 40 S. C. 134, 18 S. E. 680. These cases also show that his Honor *erred* in excluding the testimony of the defendant, James Cantrell, as to what Josiah Holden told him about the line while he was the owner and in possession of the plaintiff's land, since plaintiff does not bear to Josiah Holden any of the relations mentioned in the section.

Defendant requested certain instructions which will be reported. They were refused on the ground that they involved the facts. This was error. Most of them contained only propositions of law—rules which have been laid down by this Court for the guidance of juries in determining disputed boundaries. While most of these rules are not inflexible, and may be subject to modifications, dependent upon the peculiar facts of particular cases, yet as general rules they were correctly stated in the requests. The application of some of them was involved in the case of *Connor* v. *Johnson,* 59 S. C. 115, 133, 37 S. E. 240, where the Court said: "While it is true that a question of location is largely a question of evidence, and cannot, therefore, be reduced to any definite or fixed rule (*Coats* v. *Matthews,* 11 S. C. L. (2 N. & McC.) 99), yet there are certain general rules of location which, from a very early period in our judicial history (*Bradford* v. *Pitts,* 9 S. C. L. (2 M. Con. Rep. 115), have been recognized by our Courts down to the decision under the former appeal in this case (53 S. C. 90, 30 S. E. 833), where these rules are thus stated: 'In locating lands the following rules are resorted to, and generally, in the order stated: 1st, Natural boundaries; 2d, artificial marks; 3d, adjacent boundaries, and, 4th, courses and distances.' But in every one of the cases recognizing these general rules, which we

have consulted, the Courts have invariably also recognized the doctrine that these general rules are not inflexible, but may be modified by the circumstances of the case."

From the facts hereinbefore stated, it will be seen that it was important that the jury should have been instructed in the general rules by which they should be governed in determining the location of the line in dispute. As they were not so instructed, after proper request, we think the error was prejudicial and that it calls for reversal of the judgment.

Judgment reversed.