TAYLOR v. GLENN.

In action for recovery of land, involving disputed boundary, it was conceded
    that a branch was the boundary line, but the plaintiffs claimed that the
    branch had changed its bed. *Held*, that declarations made 40 years
    before by a former owner, under whom plaintiffs held, and by an ad-

joining land owner, were inadmissible in support of the claim that the branch had changed its bed.

Before PRESSLEY, J., Lancaster, March, 1887.

The testimony offered by plaintiffs and rejected by the Circuit Judge, so far as it bears upon the exceptions considered by this court, was as follows:

The plaintiff offered to prove by Ned McCorkle, when on the stand, that in 1842, when the branch had already changed, at the large bend, where the woodland now is, and whilst he, as a servant, was at work for Wm. Harper McMurray, moving an old fence which then ran up the east side or bank of the old bed of the branch, Wm. Harper McMurray informed him then that the bed which the water had then left, pointing it out, as located on Clark's plat, was the boundary line between him and the Ramseys, who were then the owners of all the land to which the Glenns are now entitled, and he resided then in the same house where the Glenns now reside. The defendants objected to this testimony, and the presiding judge sustained the objection, and refused to let the testimony go to the jury. And plaintiff excepted.

The plaintiff offered to prove by W. R. Dunn that shortly before this action was brought, he heard an old man, an adjacent land-owner, to wit, David Hood (deceased at the time of the trial), say that the original bed of the branch, up at the head and near to his land, as represented on Clark's plat, and running round close to the hills, was the line between Wm. Harper McMurray and the Ramseys. The defendants objected to this testimony. The objection was sustained, and the same was ruled out as secondary evidence. And plaintiff excepted.

Plaintiff offered to prove by John Wallace that in the year 1874, when he, for Mrs. Glenn, first began to clear on the land in dispute, J. H. McMurray, now deceased, a son of Wm. Harper McMurray, and plaintiff, came to him in the field where he was at work, and stopped him, and said to him that he was on the land of his mother, but that as he had cleared some of it, he might work that year if he would stop after that year, and witness agreed to do so, and did stop after he had gathered his crop.

The defendants objected to this testimony, and the presiding judge ruled it out and would not allow it to go to the jury. And the plaintiff excepted.

Plaintiff offered to prove by several witnesses that Wm. Harper McMurray declared, while he was in possession, that the old bed of the branch, as represented on Clark's plat, running round close to the hillsides, was the boundary line, but the presiding judge ruled all such inadmissible, and refused to allow it to go to the jury.

*Messrs. R. E. & R. B. Allison,* for appellants.

*Mr. Ira B. Jones,* contra.

September 26, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The judge who settled this case stated that "The case proposed in this appeal is greatly contrary to the rule of the Supreme Court, which forbids all testimony except such as bears upon the rulings of the judge as appealed from." We advert to this very just remark for the purpose of again calling the attention of the gentlemen of the bar to the growing habit of printing the testimony as it was offered on the stand, leaving it for the court to eliminate, if possible, the precise points proper for its consideration. In an action at law, this is not such "a case" as the rule requires, and necessarily leads to great labor and confusion.

It seems that this is the second action by the plaintiff for the recovery of a small strip of land in possession of the defendants, lying along a branch called for as the boundary line between them. The plaintiff contends that since the time her predecessors or grantors came into possession, to wit, since 1797, this branch has changed its bed more to the east, and now runs through her land, cutting off about seven acres of her land on the west side of the present channel of the branch. The defendants contended that the branch never has changed, and that it runs now where it originally ran, and they insist that what the plaintiff claims to be the changed bed of the branch is now, and always has been, the boundary line between the two adjoining tracts; and, as a consequence, they

claim the seven acres immediately on the west side of the present bed of the branch as their own land. And, besides, they pleaded the statute of limitations in bar of plaintiff's recovery.

The cause came on to be heard by Judge Pressley and a jury, and there was a second verdict for the defendants. A large mass of testimony is printed in the Brief, but not the charge of the judge. In the effort to ascertain whether there was error of law committed by the judge, it will be necessary to take up the exceptions *seriatim*, which for the most part relate to alleged error of the judge in excluding certain testimony.

*First exception.*—"That the judge erred in ruling out certain testimony of John D. Nesbit, and refusing to let him testify on the trial, that 'the stake' which stands (according to the testimony of a number of witnesses) on the west side of the old bed of the branch as represented on surveyor Clark's plat, was generally known and called 'Ramsey's Stake'—Ramsey being the owner of the land on the west side of said branch prior to the time the same was vested in the defendants in this action." We have looked through the Brief, and we fail to find any foundation for this exception. The Case states, "Nesbit was asked if he had heard it called Ramsey's Stake. Defendants objected. The judge ruled that it was competent to prove that McMurray had so called it—he being in possession, and that would show his claim of possession. Under this ruling Nesbit testified that he had not heard either McMurray or Ramsey, who was in possession on the west side of the branch, speak of that stake as a corner or boundary, but both claimed the branch." No further exception appears.

*Second and sixth exceptions* complain of the exclusion of the testimony of Ned McCorkle, Mrs. Taylor, John D. Nesbit, Bob Hood, and others, as to the alleged declarations of W. Harper McMurray, made at the time he was in possession of the land of plaintiff (1842–3), "that the old bed of the branch, as it ran down around the hills, was the dividing line between him and the Ramseys," &c. Was it error to exclude these alleged declarations of McMurray, that the old bed and not the running stream of the branch was his line? The action was really for the recovery of land, in which the plaintiff must recover upon the strength of

his own title, and the question of "boundary" was only inciden-
tally involved as a matter of location. These declarations of
McMurray, when he owned the Taylor land on the east side of
the branch, are alleged to have been made more than forty years
ago, and were in his own interest, as extending his land across
the running branch, to where he claimed that it formerly ran.
The rule certainly is, that "hearsay" evidence is not admissible,
and in reference to lands, even parol will not always suffice to
prove title. It is hardly necessary to say that great caution
should be exercised in the application of any rule which is opp-
posed to this general and well settled principle on the subject of
evidence.

It is earnestly urged, however, that there is at least one
exception—that declarations of a deceased person may be received
on questions of "boundary" between private estates. In the first
place, it does not strike us that this is a case of "boundary" in
the sense of the rule. There was no question of doubt as to the
"boundary," which was "the branch." There was no question
as to what was called the old bed. It was not difficult to locate
like the imaginary line of a surveyor. Under the pleadings the
only issue of fact was, whether the branch ever ran in what was
called the old bed, which seems to have been decided by the jury
in the negative for the defendants. The alleged declarations of the
McMurray family go only to the point that claim was asserted to
the old bed, assuming, as it seems, (for that affords no proof of
the fact,) that the branch at some remote period must have run
there, and afterwards changed its channel. We can understand
how the declarations of one in possession may be received as
showing the extent and character of that possession; and that
in certain cases of that kind, the doctrine of *res gestae* may be
applicable. But we cannot understand how such declarations of
claim (mere opinion) can afford evidence of the fact that the
branch had changed its bed, and therefore the title is in the
plaintiff.

This court has lately had the subject of such declarations under
consideration in the case of *Sexton* v. *Hollis* (26 S. C., 236), in
which Mr. Justice McIver, in delivering the judgment of the
court, said: "In this country, however, the exceptions seem to

have been extended so as to render such testimony admissible in cases of boundaries between private estates (*Ellicott* v. *Pearl*, 10 Peters, 412), as well as to admit the declarations of deceased persons, who shall appear to have been in a situation to possess the information, and not interested, on questions of boundary between private estates, as for instance the declarations of surveyors, chain-carriers, &c. *Spear* ads. *Coate*, 3 McCord, 227 (and other authorities). But we are not aware of any other exception which has been recognized either by the courts of this country or of England, and as we are admonished by Chief Justice Marshall, in *Mima Queen* v. *Hepburn* (7 Cranch., 290), of the danger of allowing fresh exceptions to a well settled and highly salutary rule of evidence, we are not inclined to do so," &c. This covers the case of McMurray, who was directly interested in disregarding the branch as it runs, and claiming to what is called the "old bed." To allow such declarations in support of title would be both novel and dangerous.

*The third exception* complains that it was error to rule out the testimony of W. R. Dunn as to alleged declarations of David Hood, an adjoining landowner (deceased at the time of the trial), "that the original bed of the branch, up at the head and near to his land, as represented on Clark's plat, and running round close to the hills, was the line between William Harper McMurray and the Ramseys. And he erred in also ruling out the testimony of John Wallace, wherein he offered to testify that in the year 1874 [when] he first cleared or readied[1] up a part of the land in dispute for Mr. Glenn, J. H. McMurray, now deceased, a son of William Harper McMurray, stopped him from clearing, and told him after that year he must work no more on the land." What we have already said in regard to the alleged declarations of William Harper McMurray, applies to these of Mr. Hood, except that it

---

[1] I have never seen this word before, but appellant's attorney informs me that it is commonly used by farmers in Lancaster County and means to "remove the undergrowth, briars, rubbish, &c., off the premises; to make it ready for cultivation." I also find "ready," active, transitive verb, meaning to make ready, in both Worcester's and Webster's Unabridged Dictionaries. Worcester says it is "local," and Webster says it is "obsolete."

[REPORTER.

was not shown that Mr. Hood had an interest in the subject-matter. It did not appear, however, that he had any special knowledge—like that of a surveyor or chain-carrier—of the meanderings of the branch, so as to make him an exception to the rule above stated. The alleged declarations as to where the line ran "between the Ramseys and William H. McMurray," unconnected with any certain knowledge that the branch had changed its course, could be little more than mere opinion. Besides, it was stated at the bar, and rather confirmed by what appears in the Brief, that these declarations to Dunn, a surveyor in the cause, were made *post litem motam*.

*Exceptions four, five, and seven* relate entirely to questions of fact and to alleged insufficiency of proof which this court has no right to consider. The charge is not given, and we have therefore had no aid from the views of the learned judge below; but we have not been able to discover any error of law for which we would be authorized to order a new trial.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.