15706

KLAPMAN v. HOOK *ET AL.*

(32 S. E. (2d), 882)

52

*Mr. T. P. Taylor,* of Columbia, S. C., Counsel for the Appellant,

*Mr. George Bell Timmerman, Jr.,* and *Messrs. Callison & Smith,* all of Lexington, S. C., Counsel for Respondents,

, January 25, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the Opinion of the Court, with MR. CHIEF JUSTICE BAKER filing a Dissenting Opinion.

The Majority Opinion follows:

The material facts are undisputed and are stated in the opinion of Mr. Chief Justice Baker with characteristic clearness and accuracy, although I do not agree with his conclusion that the lines were erroneously marked on the terrain, but think the error was in the plat which did not conform to the boundaries established on the ground. I only desire to state the following additional facts which the evidence discloses: The sale by the executors was made on the premises and the boundary lines between the various tracts were clearly visible to the prospective purchasers. The plat shows marked corners and various other boundary markings made by the surveyor. The land was not sold by the acre. The thirty-three foot strip in controversy represents an area of approximately two acres.

The Chief Justice has concluded that the true boundary line is that represented by the recent survey made in accordance with the distances shown on the Lyles plat. I have reached the conclusion that the correct boundary is that which was laid out on the ground and clearly marked by the surveyor.

It is virtually conceded by respondents in their testimony that if the distances on the Lyles plat control, the boundary would run as contended for by appellant; although respondents contend that in that event, appellant would be barred from recovery by adverse possession, estoppel, and the statute of limitations. If the line run on the ground in making the actual survey controls, the true boundary line is that which for 32 years was acknowledged as such by the parties and would result in respondents having legal title to the thirty-three foot strip in controversy. In instructing the jury on this issue, the trial Judge charged the following requests of respondents: "I charge you that if lines have been actually surveyed and marked and capable of identification, they will, according to well-settled principles of law, control calls for courses and distances in the determination and location of a boundary line; likewise, the call for quantity or a certain number of acres must yield to marked lines, if you find that such have been made. * * * I charge you that if lines have been actually run and marked on the ground, that would be the best evidence of the true location of the survey."

Appellant has not excepted to the foregoing portion of the charge. Appellant evidently concluded, and I think properly, that this portion of the charge constituted a sound rule in the determination of boundaries. The requests were taken almost verbatim from those approved in *Holden et al. v. Cantrell et al.,* 100 S. C., 265, 84 S. E., 826. The general rule is well established in this State that in locating lands artificial marks control courses and distances. *Connor v. Johnson,* 59 S. C., 115, 37 S. E., 240. Established corners and marked lines represent the survey as it was actually made, while courses and distances are merely descriptions of the acts done by the surveyors. Plats are made up from loose memoranda made in the field.

In *Douglass v. Fernandis,* 2 Bailey 78, the Court said: "Course and distance are less to be confided in than any

other evidence of boundary; and this, because they are seldom or never entirely relied upon, and are of all others the most subject to misconception and error, and only serve as a guide in the absence of all other." In *Sturgeon v. Floyd,* 3 Rich., 80, the Court stated the rule as follows: "Mere distance is never regarded when it conflicts with either the actual marks made by the surveyor or the well-ascertained marks called for on the plat. * * * The trees that the surveyor marked; the rocks that he set up; the fixed and permanent objects which he calls for, are more certain indications of intention than distances or even courses."

Where, as was done in this case, a deed describes the land as a certain tract or parcel as shown on a certain plat, the plat becomes a part of the deed. "In locating land upon the ground from the calls and descriptions in the map, plat * * *, the same primary rules apply as exist in the locating of calls and descriptions in a deed containing no such reference; that is, the various calls are given the same order of preference. Thus, where the lines have in fact been located and designated by monuments and there is a discrepancy between the calls for these monuments and courses and distances shown by a plan referred to in the conveyance, the normal rule as to the controlling effect of calls for monuments will be followed." 8 Am. Jur., 791.

In the case of *Lee v. Rowe et al.,* 172 N. C., 846, 90 S. E., 222, the syllabus is as follows: "Where the commissioners in allotting the shares of parties disputing a boundary line actually went upon the land and put up stakes as marking the lines of each share, such actual allotment would control their written description, if by mistake it did not conform to the actual allotment."

This conclusion would result in appellant acquiring two acres less, and the respondents two acres more, than the acreage represented on the plat; but as pointed out in *Holden v. Cantrell, supra,* under the rules for

determining disputed boundaries the quantity of land named in the deed is "ordinarily one of the lowest in the scale of importance." [100 S. C., 265, 84 S. E., 828]

Of course, the rules above referred to are not inflexible and are subject to modifications, dependent upon the peculiar facts of particular cases. *Holden v. Cantrell, supra,* and *Connor v. Johnson, supra.* The vital question is the intent of the grantor at the time the deed is executed. But the rules for locating boundaries heretofore adverted to represent those methods of reasoning which experience has taught are best calculated to effectuate such intention. In this case, no good reason appears why we should not follow these general rules. I am satisfied that the executors intended to convey up to the boundaries marked on the ground and no doubt all the purchasers thought, as the appellant and the respondents thought, that the deeds conformed to these marked boundaries.

The foregoing views do not conflict with the case of *Ouzts v. McKnight,* 114 S. C., 303, 103 S. E., 561. There it was conceded that the line run on the ground did not represent the mutual intention of the parties. It was undisputed that both parties intended an equal division of a tract containing 1,000 acres and in undertaking to accomplish this purpose, the surveyor made a mistake in running the line on the ground, giving one party 425 acres and the other 575 acres. Here I think the mistake was made by the surveyor in fixing the distances shown on the plat and the intention was that the deeds and plat should conform to the marked boundaries on the ground. The principal question in *Ouzts v. McKnight* was whether defendant could acquire title by adverse possession. It is not necessary for respondents in the instant case to resort to the claim of title by adverse possession.

In addition to the foregoing, the undisputed facts raise a conclusive presumption that the line acquiesced in by the parties for a period of thirty-two years

is the true boundary line. The following statement from 8 Am. Jur., page 802, is, I think, sound and applicable: "It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of time—usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line."

I, therefore, conclude that under the undisputed evidence, respondents acquired legal title to the disptued area of approximately two acres and their motion for directed verdict should have been granted. Under these circumstances, it was not necessary for respondents to show title by adverse possession or claim under color of title and the charge made by the trial Judge in reference thereto could not have been prejudicial to appellant.

I think the judgment should be affirmed.

MESSRS. ASSOCIATE JUSTICES STUKES, FISHBURNE and TAYLOR concur.

MR. CHIEF JUSTICE BAKER (dissenting).

This was an action of trespass to try title, and was tried in the Court of Common Pleas for Lexington County before Honorable G. Duncan Bellinger, Presiding Judge, and a jury, resulting in a verdict for the respondents.

The appellant and the respondents acquired their respective titles from a common source on the same day, to wit, November 1, 1907, and from a common source when the executors of the will of S. Walter Hook sold the estate lands of the said S. Walter Hook. The sale was made at public auction on the premises.

Prior to the sale a surveyor had been employed by the executors aforesaid, who divided the estate lands of S. Walter Hook into several tracts as delineated on a map or plat of same, the appellant purchasing tract No. 9 as shown on this plat and said to contain 40½ acres, more or less, and the respondent, Ella Corley Hook, purchasing tract No. 10, as shown on said plat, containing 52 acres, more or less. The description of the lands contained in the respective deeds reads as follows:

" * * * tract No. 9 containing forty and one-half acres, more or less, adjoining lands of James Dunning and tracts 2, 8 and 10, and fronting on the public road, having thereon the residence and other buildings and delineated on a plat of lands of said lands of said estate, made by J. F. Lyles January 12, 1907 as tract No. 9."

And

" * * * containing fifty two acres, more or less, adjoining lands of Taylor and Dunning and tracts No. 2, 3, 9 and 11, and Mrs. W. F. Hook and fronting on the public road and delineated on a plat of land of said estate made by J. T. (F?) Lyles Jan. 12, 1907, as tract No. 10, being more particularly described on said plat."

This action involves a disputed boundary line between tracts Nos. 9 and 10, the Western boundary line of tract No. 10 and the Eastern boundary line of tract No. 9. The area involved is a strip 33 feet wide.

The boundary line between the two tracts of land involved was evidenced by blazes on trees and by stakes at the corners erroneously marked on the terrain. At the time of the trial of this case the stakes had disappeared but the testimony shows that the blazes on the trees were in line with the corner stakes. Following the purchase by the respective parties of the tracts of land above referred to, appellant went into possession of tract No. 9, and the respondents into possession of tract No. 10, and in going into possession of tract No.

the respondents went into possession of all land up to the staked corners and blazed trees heretofore mentioned.

At all times since 1907 the respondents have been in the possession of the 33-foot strip of land now in dispute. In 1920 they built a fence on the Northern portion of this strip within 3 inches of the line as shown by the blazed trees and corner stakes, and a few of the old posts supporting this fence are still standing. Following the erection of this fence, the portion of the 33-foot strip of land enclosed was cultivated as a garden. In 1924, the respondents placed a building on a portion of the enclosed strip, occupying or renting the building, and when the tenants did not use the land adjacent to the building, planted same as a garden. From the wooded area of this strip of land not enclosed, respondents used wood and straw.

The appellant lived on tract No. 9, the one she had purchased, knew of the fence which respondents had built on the blazed line, knew of the erection of a building on a portion of this strip of land now in dispute and knew at all times that the respondents were claiming this entire strip as their own and making such use thereof as they saw fit.

In 1939, a surveyor was sub-dividing tract No. 9 of the appellant into lots and discovered that if the number of feet called for on the Lyles' plat were given to the appellant it would go 33 feet across the (erroneously) established line between the two tracts in question. It was then for the first time that the appellant made any claim to the 33-foot strip of land involved, she insisting that the figures on the plat should control and not the established boundary line on the land, and the line which had been recognized by all parties to this action, and affirmatively recognized by the appellant in 1936 when she conveyed to Mrs. Florence Price Cooper two acres of tract No. 9, from the Northeast corner thereof, fronting two hundred and forty (240) feet on U. S. Highway No. 1, and bounded on the East by lands of the respondent, Mrs. Ella C. Hook, for its depth on that side of

three hundred and twenty-eight and four-tenths (328.4) feet. A plat of the two acres showed the Eastern boundary line as the established (erroneous) line between appellant and the respondents. In 1939, the respondent, Mrs. Ella Corley Hook, had tract No. 10 surveyed for the purpose of dividing it equally between her two sons, named as co-respondents in this action, and it developed from this survey that she had an excess acreage over that called for by her deed and by the Lyles plat above referred to.

The respondents refused to accede to the demand of appellant for the possession of the 33-foot strip of land, and this action was commenced on October 23, 1940. The established boundary line gave the respondents more than 52 acres of land and the appellant less than 40½ acres, and according to the measurements stated on the Lyles' plat when the estate lands of S. Walter Hook were divided into tracts, the appellant and not the respondents should have gone into possession of this 33-foot strip of land.

Neither the appellant nor the respondents questioned the established line on the terrain from the date of the deeds (1907) until the survey of lot No. 9 in 1939, and neither was aware of the fact that the surveyor in 1907 in setting up the corner stakes and blazing a line had made an error of one-half chain or thirty-three feet in the measurements on the front and back of the respective tracts and in showing the boundary line on the terrain, and that it was not in accord with the plat.

Merely in the interest of accuracy, we mention that the defendants-respondents, Carl Hook and Manning Hook have never actually acquired an interest in any of the property mentioned herein, and were not necessary parties to the action. When reference herein is made to respondents, the respondent, Mrs. Ella Corley Hook, is the litigant referred to.

Appellant has seven exceptions, all of which have been abandoned, except the fourth and seventh exceptions, which

fairly raise the "Questions Involved" as stated in appellant's brief, and as follows:

"I. Was there error in submitting to the jury the question of whether or not the claim of the respondents was under color of title and thereby giving respondents the benefit of section 379 of the Code relative to possession under color of title?

"II. Was there error in allowing the jury the opportunity of deciding the case solely upon the issue of adverse possession?"

To successfully invoke the statute of limitations as a basis of title acquisition it is of course essential that the litigant claiming such title establish that his possession was hostile. This is true whether the claim of title is rested upon an instrument constituting "color of title" or upon possession and assertions of ownership constituting "claim of title." The statutory provisions dealing with this subject, Code 1942, Secs. 378-381, inclusive, do not deal with the characteristics of adverse possession; they merely delimit the area to which title by adverse possession extends and to some extent the manner in which the claimed right of possession must be asserted and exercised. On the narrow question presented here, to wit, whether title by adverse possession can be established by proof of actual or constructive possession, where the principal characteristic of the claim of title is that the possession is founded on a mutual mistake of adjoining landowners, the statutory provisions afford no enlightenment.

In other jurisdictions there is a diversity of opinion on this question, as is shown in the textual treatment of the matter in 2 C. J. S., Adverse Possession, § 84, p. 630 *et seq.*; Annotation, 97 A. L. R., 14 *et seq.* In South Carolina, however, the question has been clearly settled by decisions of this Court.

In the case of *Ouzts v. McKnight,* 114 S. C., 303, 103 S. E., 561, 562, this Court dealt with a situation comparable in principle with the problem here. There adjoining land-

owners went into possession in accordance with a plat which set off to the litigants, in a partition suit, five hundred acres each; but in laying the line between the two tracts, one of the litigants was by error given five hundred and seventy-five acres and the other four hundred and twenty-five acres. Deeds were made carrying this division into effect. The action was brought to remedy the mistake and the defense was that the defendant had acquired title to the excess acreage by adverse possession. The Court said:

" * * * There was no room to apply the statute of limitations.

"The defendant in effect admits that there was a mistake in running the line on the ground, for he testified that he only knew that a mistake had been made in running the line on the ground a year before the action was brought, and that up to that time he had been under the impression that there had been a fair and equal division of 500 acres to the side. That amounts to saying that he was on the plaintiff's land, but did not know it, and did not intend to be there.

"Adverse possession is hostile possession, and hostile possession is possession with intention to dispossess the owner. 3 Washburn (4th Ed.), p. 129."

This case was cited with approval and followed in the case of *Atlantic Coast Line Railroad Company v. Baker,* 143 S. C., 445, 141 S. E., 688.

From the foregoing it is perceived that the able Circuit Judge erred in the instructions to which exception is taken in that he gave the respondent the benefit of the doctrine of "color of title" under which title could be acquired to the lands in dispute without the actual occupancy thereof that is required in other cases of adverse possession, when as shown above this doctrine has no application; that is to say, since the deed to the respondent and the plat to which reference is made therein constitute the "color of title" and since under this deed and plat the respondent would not ob-

tain title to anything more than what she was entitled to receive, the doctrine has no application to the facts of this case.

And on the second issue, respondent's defense depended wholly upon the common-law doctrine of adverse possession independently of any question of color or claim of title, because the mutual mistake of the parties eliminated from the case the indispensable element of hostility in the assertion of ownership; there can be no title by adverse possession where the possession, whether it be under a deed as color of title or actual possession of the lands of another, was taken and was continued under a mistaken belief on the part of both of the interested parties.

In the above light, the trial Judge erred in refusing appellant's motion for a direction of verdict, but since the exceptions of appellant on this subject were abandoned, we are thereby precluded from rendering judgment absolute. Accordingly, the case should be remanded for a new trial.