2515

Robert G. KNOX and Nellie J. Knox, Appellants v.
Monty Joe BOGAN, Respondent.

(472 S.E. (2d) 43)

Court of Appeals

*John Martin Foster,* Rock Hill, *for appellants.*

*Thomas H. White, IV,* of *Whitney, White & Diamaduros,* Union, *for respondent.*

Heard Apr. 2, 1996.

Decided May 28, 1996.

CURETON, Judge:

The appellants' (Knoxes) complaint alleges they are the owners of property adjacent to land of the respondent (Bogan) and that Bogan has trespassed upon their land in two locations. They ask for actual and punitive damages against Bogan. Bogan answered the complaint with a general denial, and counterclaimed for a court determination of the boundary line between the parties' properties. The two areas in dispute are hereinafter referred to as the northern and southern tracts. The trial court determined the matter before it was "an action in trespass to try title." The court concluded the Knoxes had not proven their right to ownership of either tract and confirmed title in Bogan to both tracts. We affirm in part, reverse in part and remand.

The Knoxes appeal the trial court's order on three different grounds. First, they assert that as to the southern tract, the evidence establishes the parties and/or their predecessors in title acquiesced in the southern boundary line separating their properties for over seventy years. Secondly, they claim to have established ownership of the southern tract by adverse possession. Finally, as to the northern tract, they appear to argue, although not clearly, that the trial court erred in not accepting the survey presented by them as establishing the boundary line between the parties' properties. We affirm the trial court as to the northern tract, but reverse as to the southern tract. The Knoxes have not appealed the trial court's failure to award them damages.

A boundary dispute, if it encompasses an issue of title, is an action at law. *Bodiford v. Spanish Oak Farms, Inc.*, 317 S.C. 539, 455 S.E. (2d) 194 (Ct. App. 1995). Likewise, an action in trespass to try title is an action at law. *Cummings v. Varn*, 307 S.C. 37, 413 S.E. (2d) 829 (1992). In actions at law tried without a jury, the findings of fact of the judge will not be disturbed on appeal unless found to be without evidence which reasonably supports them. *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

There is some confusion as to what causes of action were before the trial court. Generally speaking, there are several ways a disputed boundary line may be judi-

cially determined. It may be determined incidentally by an action in ejectment where the plaintiff is out of possession of property, or in trespass to try title where the plaintiff is in possession and believes the defendant has trespassed on his property. Additionally, disputed boundary lines may either be directly or indirectly judicially settled in actions to quiet title, actions for injunctions and declaratory judgment actions. Finally, the leading case of *Uxbridge Co. v. Poppenheim*, 135 S.C. 26, 133 S.E. 461 (1926) recognized an action in equity to settle or fix a boundary. A fair reading of the Knoxes' complaint shows they claim ownership and possession of the tracts in question and trespass thereon by Bogan. Under the case of *Beaufort Land & Inv. Co. v. New River Lumber Co.*, 86 S.C. 358, 68 S.E. 637 (1910), allegations of title and possession are sufficient to recover damages without proof of a "perfect title" in the plaintiff; such allegations support an action in the nature of *trespass quare clausum Fregit. Id.* at 362, 68 S.E. at 638. On the other hand, the purpose of an action in trespass to try title is to establish the plaintiff's title to the land. *Warren v. Wilson*, 89 S.C. 420, 71 S.E. 818 (1911). In such an action, the plaintiff must show title in himself and recover, if at all, upon the strength of his own title and not the weakness of his adversary's title. *Douglass v. Perry*, 245 S.C. 486, 141 S.E. (2d) 348 (1965). In an action of trespass to try title, one in actual possession, not obtained by tortious eviction, is regarded as the rightful owner until proven otherwise. *Cummings v. Varn*, 307 S.C. at 41, 413 S.E. (2d) at 831; *see also Beaufort Land*, 86 S.C. 358, 68 S.E. 637 (in a trespass to real property case, the court stated possession not obtained by a tortious act is prima facie evidence of title, and upon this the plaintiff may rest until the defendant justifies his invasion of the possession by proving either title in himself or a license to enter from the true owner).

The court interpreted the Knoxes' complaint as one in trespass to try title and apparently concluded Bogan's counterclaim was one to establish the location of the boundary line between the properties. As to the northern tract, the court determined the Knoxes had "failed to carry their burden of proof in attempting to clarify their title to [the] disputed property." As to the southern tract, the court concluded the Knoxes relied on the theory of adverse possession which they

failed to support by sufficient evidence. The court then found Bogan "clearly established his boundary to [the southern tract] by the preponderance of [the] evidence." While the trial court was technically incorrect in interpreting the Knoxes' pleadings as an action in trespass to try title and not as one of *trespass quare clausum fregit,* the Knoxes have not appealed the court's characterization and treatment of their action. *But see Brogdon v. D.W. Alderman & Sons,* 165 S.C. 234, 163 S.E. 795 (1932) (an action for damages for *trespass quare clausum fregit* brought into consideration a boundary dispute where defendant obtained a court order to have the property surveyed pursuant to statute to establish the boundary line). Moreover, we are convinced that the primary purpose of the Knoxes' suit is to determine title to the disputed tracts of land, an action in trespass to try title. *See Corley v. Looper,* 287 S.C. 618, 340 S.E. (2d) 556 (Ct. App. 1986).

As stated in the leading case of *Uxbridge,* 135 S.C. 26, 133 S.E. 461:

> It appears to be well settled by the unanimous opinion of judges and text writers that ordinarily the matter of settling disputed questions of boundaries is ancillary to actions at law of trespass to try title or ejectment. . . .

In the case of *Klapman v. Hook,* 206 S.C. 51, 32 S.E. (2d) 882 (1945), brought as an action of trespass to try title, the court indicated that a disputed boundary line can be established by acquiescence of the parties for the period of the statute of limitations applicable to adverse possession cases. With this background in mind, we now turn to a discussion of the parties' claims to the two tracts.

### Northern Tract

The trial court concluded the Knoxes made no claim to the northern tract by way of adverse possession. The Knoxes do not challenge that finding on appeal. Bogan argues in his brief the Knoxes have advanced no proof of ownership to entitle them to any relief. We agree. As noted previously, the Knoxes appear to argue they are entitled to possession by reason of the fact their deed should be construed to include the tract. The trial court adopted the survey submitted by Bogan finding it more accurately sets forth the metes and

bounds description contained in an 1891 deed used by survey-
ors for both parties as the basis for establishing the boundary
line.[1] A review of the record reveals ample evidence to sup-
port the trial court's conclusion. We affirm its conclusion as to
the northern tract. Moreover, even if the Knoxes claim owner-
ship of this tract by diverse possession, they have not shown
the elements of adverse possession. As best we can tell, they
do not claim to have been in exclusive possession of the tract
at any time, an essential element of adverse possession. *Gregg
v. Moore*, 226 S.C. 366, 85 S.E. (2d) 279 (1954).

### Southern Tract

The record is clear that the Knoxes and their predecessors
in interest have been in possession of the southern tract for
approximately seventy years.[2] All witnesses for the Knoxes
testified to an old fence separating the properties as being the
acknowledged boundary line between the properties. While
James Knox, Jr.,[3] the only witness for Bogan who had personal
knowledge of the history of the fence, testified there had
never been a discussion or dispute about the fence being the
property line, he acknowledged the fence existed all of his life,
and that his father and thereafter the Knoxes occupied their
property up to the fence without protest from him or his pre-
decessor in title. In fact, James' testimony was to the effect
that until he had a survey prepared in 1983, he either did not
know where the line was or believed the fence was the divid-
ing line between his property (now Bogan's) and the Knoxes'
property.

The trial court denied the Knoxes' claim of title to the
tract finding their possession was not hostile because
they and their predecessors in title possessed the tract

---

[1] Surveyors for both parties agreed an 1891 deed from Joseph Gault to W.G.
Gault was the only one in existence that described one of the parties' prop-
erty in metes and bounds.

[2] It is undisputed James Knox, Robert Knox's father, purchased the Knox
property in 1920 from Anna Foster Gault. It is further undisputed that pur-
suant to subsequent intra-family conveyances, title to this property now rests
in Robert G. and Nellie J. Knox.

[3] Robert Knox, Fred Knox, Alfred Knox and James Knox, Jr., are brothers
who grew up on the Knoxes' property which was the Knoxes' old home place.
The Knoxes purchased the home place in 1967. James Knox, Jr. purchased the
adjoining Bogan property in 1945 with the help of his father and occupied it
until it was sold to Bogan in 1992.

under the "assum[ption] that this disputed portion of property was their's [sic]" and, thus, their possession did not meet the hostility requirements of *Lusk v. Callaham*, 287 S.C. 459, 339 S.E. (2d) 156 (Ct. App. 1986). Until recently, writers and this court alike thought that in South Carolina, unlike in most other jurisdictions, possession of property under a mistaken belief that property is one's own and with no intent to claim against the property's true owner could not constitute hostile possession. *Id.* Our Supreme Court in *Perry v. Heirs at Law and Distributees of Gadsden*, 316 S.C. 224, 449 S.E. (2d) 250 (1994), however, noted that the requirement of hostility is applicable to "cases involving boundary disputes between adjoining land owners only." *Id.* at 225, 449 S.E. (2d) at 251. The Court cited the case of *Wigfall v. Fobbs*, 295 S.C. 59, 367 S.E. (2d) 156 (1988) and noted that in *Perry*, unlike *Lusk*, the action involved "a dispute over an entire tract of land; therefore, the mistaken belief rule set out in *Lusk* is inapplicable." *Perry*, 316 S.C. at 225, 449 S.E. (2d) at 251. Hence, to the extent the trial court treated the Knoxes' claim as one for adverse possession of an entire tract of land, yet required proof of hostility, it was in error. In any event, we think the Knoxes have proven entitlement to the southern tract by either adverse possession or acquiescence as to the southern boundary.

To constitute adverse possession, the possession must be continuous, hostile, open, actual, notorious and exclusive for at least ten years. *Davis v. Monteith*, 289 S.C. 176, 345 S.E. (2d) 724 (1986). As we understand the state of the record on appeal, there is no question but that the Knoxes' possession has been continuous, open, actual, notorious and exclusive for both the ten-year adverse possession statutory period and the twenty-year common-law presumption of grant period. The only issue is whether the Knoxes' possession was sufficiently hostile. As we read *Perry v. Heirs at Law* and *Wigfall v. Fobbs*, either there is no longer a hostility requirement where the claim is to an entire tract, or South Carolina does in fact follow the majority view that the mental attitude of the possessor of land is immaterial. Under the majority view an actual, exclusive, open and notorious possession without the consent of the title owner is both wrongful and adverse and will ripen into perfect title in the usual way when the statute of limitations has run. *See* Allen Levern Ray,

Note, *South Carolina Law on Boundary Disputes*, 12 S.C. L.Q. 418, 421 (1960). The majority view represents the most practical approach to the hostility requirement of adverse possession and is in keeping with the national trend of authority. *Id.* at 424.

Because the instant action was one tried by the court without a jury, the court's findings of fact have the same force and effect as a jury verdict unless the court committed some error of law leading it to an erroneous conclusion or unless the evidence is reasonably susceptible only of a conclusion opposite of those reached by the court. *Robinson v. Carolina Cas. Ins. Co.*, 232 S.C. 268, 101 S.E. (2d) 664 (1958). Here, the trial court committed an error of law in its interpretation of the hostility requirement under South Carolina law. Under the Knoxes' adverse possession claim, a reasonable inference deducible from the evidence is that regardless of the intent of the original possessor in entering the tract,[4] the Knoxes and their predecessor in title have intended to possess the tract with the intention of owning it exclusively and without the actual or implied permission of anyone. *See* 3 Am. Jur. (2d) *Adverse Possession*, §§ 49, 50 (1986) (the only requirement is that the one in possession claim the exclusive right thereto for the statutory period). We therefore reverse the trial court's ruling that the Knoxes do not own the southern tract by adverse possession because they have not shown hostility and remand to the trial court for reconsideration.

As to the Knoxes' claim of ownership of the southern tract by acquiescence in an old fence as the property line,[5] the requirements of *Klapman* appear to have been satisfied. In *Klapman,* the Supreme Court said:

It is well established that if adjoining landowners occupy their respective premises up to a certain line which they

---

[4] Although no one testified as to when the fence was constructed, James Knox, Jr., who was 73 at trial, stated the fence had been there all his life. Implicit in his testimony is the fact that James' father and/or his predecessor in title had also possessed the tract all of James' life.

[5] While the trial court did not expressly mention the theory of acquiescence in its order, the theory was fully advanced at trial. Thus, we hold the issue was tried by consent. Further, because the issue of acquiescence surfaces in this case by way of the proper location of the boundary line, the trial court necessarily ruled against the Knoxes on this theory.

mutually recognize and acquiesce in for a long period of time—usually the time prescribed by the statute of limitations—they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line.

206 S.C. at 57, 32 S.E. (2d) at 884, citing what is now 12 Am. Jur. (2d) *Boundaries*, § 85 (1964). The record lends itself to the conclusion that the Knoxes and their predecessor in title, as well as James Knox, Jr.[6] and his predecessor in title, recognized and acquiesced in the southern property line as being the old fence in excess of the periods required for adverse possession and a presumption of grant. As stated in 12 Am. Jur. (2d) *Boundaries*, § 88 (1964), to establish a fence as a boundary line, it is not necessary that there be an express agreement. An agreement "may be inferred from or implied by the conduct of the parties, especially where the fence is acquiesced to as the boundary line for the period of the statute of limitations."). Nevertheless, Bogan cites 3 Am. Jur. (2d) *Adverse Possession*, § 63 (1986) for the proposition that an essential element of acquiescence is the requirement of "uncertainty or dispute as to the location of the true boundary line." It is precisely this often referred to requirement of "uncertainty" and a subsequent agreement or understanding settling that uncertainty, that have given rise to much confusion in the acquiescence area. As noted in James O. Pearson, Annotation, *Fence As Factor In Fixing Location Of Boundary Line— Modern Cases*, 7 A.L.R. (4th) 53, 59 (1981), "[i]t has been said the doctrine of boundary by acquiescence is in chaotic condition. This confusion apparently results from the intermingling of the doctrine of boundary by acquiescence with that of

---

[6] We find no merit in Bogan's argument that the testimony of his own witness, James Knox, Jr., may not be used to support the Knoxes' claim of acquiescence because James is a former owner. The law Bogan cites applies to the inadmissibility of declarations against interest of former owners of property, which is not the case here. *See Beaufort Land Inv. Co. v. New River Lumber Co.*, 86 S.C. 358, 68 S.E. 637 (1910); *Levi v. Gardner*, 53 S.C. 24, 30 S.E. 617 (1898); *Taylor v. Glenn*, 29 S.C. 292, 7 S.E. 483 (1888).

boundary by parol agreement." We hold that where, as here, there has been a recognition by adjoining property owners of a clearly defined line for a long period of time, there is no requirement under South Carolina law that the plaintiff show an active dispute or uncertainty as to the true line and a settlement of that dispute or uncertainty by the parties as an element of proof of title by acquiescence. We therefore remand this issue to the trial court for reconsideration.

Accordingly, the order of the trial court is affirmed as to the northern tract of land and reversed as to the southern tract of land. We remand the case to the trial court for reconsideration the Knoxes' claims to the southern tract by adverse possession and acquiescence as to the boundary line.

Affirmed in part, reversed in part and remanded.

GOOLSBY and ANDERSON, JJ., concur.