THE STATE OF SOUTH CAROLINA

THIS OPINION 
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT 
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 
 
 
 
 J. C. and Nancy Lindsey, Respondents,
 
 
 

v.
 
 
 
 
 Eley and Lisa Vann and I. A. Romo, PLS, Defendants,
 Of whom Eley and Lisa Vann are, Appellants.
 
 
 

Appeal From Greenville County
 Charles B. Simmons, Jr., Master-In-Equity

Unpublished Opinion No. 2004-UP-442
 Heard May 13, 2004  Filed August 23, 2004

REVERSED

 
 
 
 
 Clarke W. McCants, III, of Aiken, for Appellants. 
 Eric K. Englebardt, of Greenville, for Respondents. 
 
 
 

PER CURIAM:  J. C. and Nancy Lindsey brought actions for negligence, 
 trespass, and conversion against their next-door neighbors, Eley and Lisa Vann, 
 alleging the Vanns improperly erected a fence on their property. 
 [1]   The master in equity determined the original boundary between the 
 two properties placed the fence on the Vanns side of the line, but modified 
 the line in favor of the Lindseys based on a finding of acquiescence by the 
 Vanns predecessors in title.  We reverse.  
FACTS 
The Lindseys and Vanns are adjoining property owners in a residential subdivision.  
 Both properties front a cul-de-sac with the common boundary running from an 
 undisputed northern terminus at the joint rear corner southward to the edge 
 of the cul-de-sac.  The location of the southern terminus of the boundarythe 
 point on the cul-de-sacis the point in dispute.  
 The Vanns constructed a fence along a line southward from the undisputed northern 
 terminus to a point on the cul-de-sac that the Lindseys contend is within their 
 property line.  When the Lindseys brought their action, the Vanns counterclaimed 
 for declaratory judgment to determine the true boundary between the properties.  
 At trial, the Vanns surveyor testified he discovered an older pin buried at 
 a different point on the cul-de-sac that he believed was the true southern terminus. 
 [2]   The Lindseys surveyor claimed the southern terminus was at another 
 point, 21.34 feet west of the Vanns fence, thereby placing the fence well within 
 the Lindseys property.  On cross-examination, the Lindseys surveyor admitted 
 he did not find any artificial marker similar to the buried pin discovered by 
 the Vanns surveyor to support his suggested location of the southern terminus.  

The master determined and held the true southern terminus of the boundary to 
 be as testified to by the Vanns surveyor and as shown as pin 1 on the Vanns 
 Exhibit No. 2.  The master therefore concluded the original and lawful boundary 
 was the line from the undisputed northern terminus to pin 1 on the cul-de-sac, 
 resulting in a finding that the fence is located on the Vanns property.  However, 
 the master then concluded that the Vanns predecessors in title had acquiesced 
 in the Lindseys use of at least a portion of the disputed land.  Based on this 
 finding, the master ordered the boundary line be redrawn so that its southern 
 terminus is halfway between the points testified to by the two contending surveyors, 
 thereby giving each landowner one-half of the disputed property.  This division 
 required the Vanns to remove their fence.  
STANDARD OF REVIEW 
The Lindseys complaint alleged the Vanns trespassed on their land and interfered 
 with their peaceable possession, but did not assert a claim of legal title.  
 Therefore, the Lindseys cause of action is trespass quare clausum fregit.  
 Gunters Island Hunting Club v. Hucks, 282 S.C. 124, 126, 317 S.E.2d 
 470, 472 (Ct. App. 1984) (An action for trespass quare clausum fregit may 
 be based upon possession only and not necessarily upon legal title.).  However, 
 the Vanns answered and counterclaimed for a declaratory judgment to determine 
 the true boundary between the properties.  The masters order treated the parties 
 claims as a boundary dispute, and the Lindseys have not appealed the courts 
 characterization or treatment of their action.  Accordingly, we review this 
 case as an equitable matter involving the location of a boundary.  Knox v. 
 Bogan, 322 S.C. 64, 67, 472 S.E.2d 43, 45 (Ct. App. 1996) (An action to 
 settle or fix a boundary may be treated as an equitable matter.); Uxbridge 
 Co. v. Poppenheim, 135 S.C. 26, 30-31, 133 S.E. 461, 462 (1926) (holding 
 when the plaintiff cannot prove with certainty where a boundary line is to show 
 the defendant has overstepped it, ordinary remedies at law are inadequate and 
 such a circumstance requires the interposition of equity).  
DISCUSSION
The Vanns contend the master erred by modifying the lawful boundary based on 
 a finding of acquiescence by their predecessors in title.  We agree. 
The master determined pin 
 1, unearthed by the Vanns surveyor, was the accurate southern terminus of the 
 boundary and, as a result, the lawful boundary ran from pin 1 to the undisputed 
 northern terminus as shown on the Vanns Exhibit No. 2.  This finding has not 
 been appealed and is, therefore, the law of the case.  Lucas v. Rawl Family 
 Ltd. Pship, Op. No. 25817 (S.C. Sup. Ct. filed May 3, 2004) (Shearouse 
 Adv. Sh. No. 18 at 36) (holding the trial judges unappealed ruling is the law 
 of the case).  
Accordingly, any variation or modification of the true boundary must be based 
 on proof of acquiescence by the parties.  The master found modification was 
 appropriate to reflect the acquiescence of the Vanns predecessor in title[.]  
 He cited the Lindseys testimony they had maintained a portion of the disputed 
 area since 1977 without any objection from their then neighbors, the Alewines, 
 from whom the Vanns purchased their property in 1995.  The master also 
 relied on the Lindseys testimony that they planted grass and plants in the 
 area where the fence was constructed and Lisa Vanns testimony that she observed 
 the Lindseys mowing and tending the disputed area after they purchased the property 
 from the Alewines.  However, the court noted the Vanns testified they had also 
 performed work in the disputed area.  
To support a finding of acquiescence in this case, all parties, including the 
 Lindseys and the Vanns or the Vanns predecessors in title, must have recognized 
 and accepted the modified boundary line as the true line.  See Knox, 
 322 S.C. at 71-73, 472 S.E.2d at 48-49 (holding adjoining property owners mutual 
 acquiescence in and recognition of a clearly defined boundary line for a long 
 period of time is proof of title by acquiescence); see also Klapman 
 v. Hook, 206 S.C. 51, 57, 32 S.E.2d 882, 884 (1945) (holding there is a 
 conclusive presumption that a certain line recognized and acquiesced in by adjoining 
 landowners for a sufficient length of time is the true boundary line).  However, 
 in this case, the parties have not recognized any clearly defined line and there 
 is no evidence in the record to support a finding they mutually recognized and 
 acquiesced in the modified boundary line created by the masters final order.  
 The Lindseys testified at trial and conceded in their brief that they did not 
 know the location of the boundary.  The Alewines are deceased, and there is 
 no testimony that they recognized a clearly defined boundary either.  Contrary 
 to recognizing the modified boundary drawn by the master, the Vanns testified 
 they tended the disputed area and ultimately built the fence within the disputed 
 area.  Absent evidence of the parties acknowledgment of a clearly defined boundary, 
 there can be no acquiescence.  
Accordingly, we conclude modification of the lawful boundary line was error, 
 and the unappealed finding of the master establishing the boundary line running 
 from the undisputed northern terminus southward to the point on the cul-de-sac 
 identified as pin 1 on the Vanns Exhibit No. 2 is the law of the case.  We 
 reverse so much of the masters order as creates a new boundary and requires 
 the Vanns to dismantle their fence.  
REVERSED. 
HEARN, C.J., STILWELL, J., and CURETON, A.J., concur. 

 
 [1]  The Lindseys also sued 
 the Vanns original surveyor, I. A. Romo.  Romos dismissal has not been appealed.  
 

 
 [2]  The pin unearthed by 
 the Vanns surveyor is marked as pin 1 on the Vanns Exhibit No. 2.