717 S.E.2d 70

**Johnnie MAJOR, Personal Representative of the Estate of Ed Major a/k/a Edward Major a/k/a Edward Major, Sr., Appellant,**

v.

**PENN COMMUNITY SERVICES, INC., a South Carolina Not–For–Profit Corporation, Respondent.**

No. 4838.

Court of Appeals of South Carolina.

Submitted March 1, 2011.

Decided June 8, 2011.

Withdrawn, Substituted and Refiled Oct. 10, 2011.

Rehearing Denied Oct. 10, 2011.

176

Ray A. Lord, of Irmo, for Appellant.

Louis O. Dore, of Beaufort, for Respondent.

WILLIAMS, J.

On appeal, Johnnie Major, as personal representative for the estate of Edward Major (the Estate), contests the master-in-equity's finding that Penn Community Services, Inc. (Penn) is the fee simple owner of 6.2 acres of real estate in Beaufort County (the Property). The Estate first claims the master lacked subject matter jurisdiction because the master's decision to quiet title to the Property required a determination of intestate heirs, which is exclusively within the probate court's jurisdiction. The Estate also argues the master erred in concluding a certain deed conveyed the Property to Penn because the master's decision was based upon an erroneous determination of intestate succession. We affirm.

## FACTS/PROCEDURAL HISTORY

Sub Lot 8,[1] bordered in part by Johnson River, is located on Saint Helena's Island in Beaufort County, South Carolina. Sub Lot 8 comprises 14.13 acres of real estate, and of the 14.13 acres, the Estate undisputedly owns 7.93 acres. At issue in this appeal is whether the Estate or Penn possesses title to an additional 6.2 acres located in the southern portion of Sub Lot 8 (the Property).

In 1866, Edward Philbrick deeded "[ ] Lot No. (8) ... containing eighteen acres more or less" to Scipio Josiah. Scipio Josiah later died intestate, leaving his only child, William Josiah, as his sole heir. On January 5, 1932, William

---

1. For ease of reference, this court refers to "Lot 8" as the original eighteen acres, "Sub Lot 8" as the 14.13 acres, and "the Property" as the disputed 6.2 acres that is in the southern portion of Sub Lot 8.

Josiah conveyed Lot 8 to F.R. Ford for payment of delinquent taxes. The 1932 deed described Lot 8 as "eighteen acres, more or less, being bounded . . . on the North by the marshes of Johnson River, East by lands of Penn School, South by lands of Penn School, [and on the] West by [m]arshes of Johnson River." On June 17, 1936, F.R. Ford conveyed the same parcel to brothers Edward and James Major. The 1936 deed described Lot 8 with the identical language stated in the 1932 deed.

On September 23, 1950, the brothers partitioned the eighteen acres in Lot 8, with the northern ten acres deeded to James Major and the southern eight[2] acres deeded to Edward Major. After Edward Major passed away in 1997, the Estate brought an action to quiet and confirm title to Sub Lot 8 as well as to confirm the southern boundary line of Sub Lot 8. In its complaint, the Estate asserted it was the rightful owner of "the southern portion of Sub Lot 8," which, in addition to its ownership of 7.93 acres, totaled 14.13 acres. The Estate averred it never conveyed away any portion of Sub Lot 8, and Penn's only rightful claim of ownership was to 3.11 acres undisputedly owned by Penn. In response, Penn asserted it had obtained lawful title of the Property from R.R. Legare in 1916,[3] which was duly recorded at the Beaufort County Register of Deeds office. Penn claimed it immediately entered into possession of the Property after this conveyance.

The parties introduced various plats at trial in an attempt to accurately document the master chain of title. Penn first submitted the Simons–Myrant Plat, which was prepared and recorded in 1905 before Penn purportedly purchased the Property. The Simons–Myrant plat illustrated Penn's northernmost boundary including land only up to the disputed 6.2 acres. Penn also submitted the Palmer and Malone Plat, which was prepared and recorded in 1967. This plat included the disputed 6.2 acres, which was consistent with Penn's claim that it acquired the Property in 1916. Last, the Estate

---

2. The record reflects the Estate owns exactly 7.93 acres.

3. Penn initially asserted in its Answer and Counterclaim that it obtained title from Jane Chisolm in 1959. Penn orally amended its Answer and Counterclaim, without objection, at trial to allege a conveyance from R.R. Legare to Penn by deed dated October 12, 1916.

submitted the Gasque plat, which was prepared by a local surveyor, David Gasque, for trial and was not recorded. The Gasque plat depicted Sub Lot 8 as consisting of 14.13 acres, which included the disputed 6.2 acres and the 7.93 acres originally deeded to Edward Major in 1950. Besides the Gasque plat, the Estate presented no other evidence to show it ever surveyed, platted, or recorded Sub Lot 8.

In support of its claim that the Estate was the rightful owner of the Property, several family members testified they used the Property to graze animals for a number of years and had, at some point in time, planted a small garden on the Property. The Major family also stated they, along with other citizens in the community, frequently used the "Penn dock" on the eastern end of the Property for swimming, boating, and crabbing.

In support of its claim of ownership, Penn's acting executive director and two past executive directors testified Penn had been in possession of the Property for thirty-five years without any claims of adverse ownership by the Major family. The directors noted various Major family members lived adjacent to the Property; however, they claimed none of the Major heirs ever questioned Penn's ownership, despite Penn's establishment of a nature trail and construction of a dock on the eastern end of the Property.

Additionally, Penn presented, without objection, the 1916 deed from R.R. Legare to Penn, which was duly recorded. The 1916 deed stated R.R. Legare was conveying "the same land inherited by Florence Major from her grandfather, Scipio Josiah, containing 6 acres, and portion described as being bounded by Penn School lands, by the 'Corner' by land of Rachel Simmons and by land of William Josiah." Penn also presented, without objection, a property record card prepared by Arthur Christensen, a surveyor in Beaufort County during the relevant time period. The property record card for William Josiah stated, "left daughter, Florence, who married Tom Major ... Lot 8 Corner from [William's] father, Scipio Josiah." The card subsequently noted a conveyance from William Josiah to F.R. Ford on January 5, 1932.

Because the R.R. Legare deed to Penn did not contain a metes and bounds description but was only defined by adja-

cent landowners' property lines, the master resorted to the various plats and deeds as well as witnesses' testimony to determine whether the Property was located in Sub Lot 8. In his final order, the master found Penn was the fee simple owner of the Property, free and clear of any claims of ownership by the Estate. This appeal followed.

## STANDARD OF REVIEW

Generally, an action to quiet title is one in equity. *Fox v. Moultrie*, 379 S.C. 609, 613, 666 S.E.2d 915, 917 (2008). However, when the defendant's answer raises an issue of paramount title to land, such as would, if established, defeat plaintiff's action, the issue of title is legal. *Dargan v. Tankersley*, 380 S.C. 480, 483, 671 S.E.2d 73, 74 (2008). Therefore, in a case tried without a jury, the factual findings of a judge regarding title will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings. *Townes Assoc., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). This scope of review is equally applicable to the factual determinations of a master when, as in the present case, he enters final judgment. *May v. Hopkinson*, 289 S.C. 549, 554–55, 347 S.E.2d 508, 511 (Ct.App.1986).

## LAW/ANALYSIS

The Estate first claims the master did not have subject matter jurisdiction to quiet title to the Property because his ruling necessarily involved a determination of intestate heirs, which can only be decided by the probate court. We disagree.

The Estate filed an action in circuit court "for the purposes of quieting and confirming title to the [P]roperty ... and confirming the southern boundary line thereto ...."[4] An action to quiet title is governed by section 15–67–10 of the South Carolina Code (2005). Pursuant to section 15–67–10,

---

4. A review of the Estate's complaint and the parties' briefs establish the main purpose of this suit was to determine title to the disputed 6.2 acres. We find the boundary line question is incident to the action to quiet title. *See Knox v. Bogan*, 322 S.C. 64, 67, 472 S.E.2d 43, 45 (Ct.App.1996) (finding disputed boundary lines may either be directly or indirectly judicially settled in actions to quiet title).

Any person in possession of real property ... or any person having or claiming title to vacant or unoccupied real property may bring an action against any person who claims or who may or could claim an estate or interest therein or a lien thereon adverse to him for the purpose of determining such adverse claim and the rights of the parties, respectively.

Once the Estate filed this action, the circuit court was required to refer the action to a master-in-equity to first determine rightful ownership of the Property and then to enter final judgment. *See* S.C.Code Ann. § 15–67–60 (2005) ("In all actions brought under this article the court, or a judge thereof, shall refer the action to a master or special referee to take the testimony as to the plaintiff's claim or title and as to all the facts and circumstances unless the testimony shall be taken in open court and carefully inquire as to the existence of claim by and residence of all nonresidents."); *see also* S.C.Code Ann. § 14–11–85 (Supp.2010) ("When some or all of the causes of action in a case are referred to a master-in-equity or special referee, the master or referee shall enter final judgment as to those causes of action and an appeal from an order or judgment of the master or referee must be to the Supreme Court or the court of appeals ....").

While the Estate claims the master improperly asserted subject matter jurisdiction in contravention of section 62–1–302(a)(1) of the South Carolina Code (2009)[5] when the master found "Florence Major acquired an intestate share in the Scipio Josiah estate," we find this argument unpersuasive.

The master was not required to make a determination of heirs to establish rightful ownership of the Property. In order to identify the subject matter of the grant, and as such, whether Penn had paramount title to the disputed land, the master had to determine whether the R.R. Legare deed was in the chain of title and constituted a conveyance out of Sub Lot 8. *See Powers v. Rawles,* 119 S.C. 134, 156, 112 S.E. 78, 86 (1922) ("The sole purpose of a description of land as contained in a deed is to identify the subject-matter of the grant."). Accordingly, the master recited certain lineage that was al-

---

**5.** Section 62–1–302(a)(1) grants "the probate court ... exclusive original jurisdiction over all subject matter related to ... [the] determination of heirs and successors of decedents ...."

ready documented in the R.R. Legare deed and the property record card in an effort to identify the exact location of the Property. *See Richardson v. Register*, 227 S.C. 81, 88, 87 S.E.2d 40, 43 (1955) (parol evidence is admissible to elucidate latent ambiguities in written instruments).

■ Specifically, the R.R. Legare deed conveyed roughly six acres to Penn, described as "the same land inherited by Florence Major from her grandfather, Scipio Josiah ... and ... bounded by Penn School lands, by the 'Corner' by land of Rachel Simmons and by land of William Josiah." The property record card for William Josiah stated, "left daughter, Florence, who married Tom Major ... Lot 8 Corner from [William's] father, Scipio Josiah" and later noted a conveyance "to F.R. Ford on January 5, 1932." While the deed and property record card appear to conflict on whether Florence acquired her share of the estate directly from her grandfather, Scipio, or directly from her father, William, this discrepancy is immaterial for purposes of determining whether Penn or the Estate possessed paramount title. Moreover, we note the Estate never contested the validity, accuracy, or recordation of the 1916 deed at trial. The Estate's attempt to bootstrap its subject matter jurisdiction claim to evidence that it never contested prior to this appeal is unpersuasive, particularly when the deed and the property record card establish Florence Major had ownership rights to approximately six acres that were described in both documents as the "Corner" of Lot 8. Because the R.R. Legare deed expressly conveyed six acres in Lot 8 owned by Florence Major to Penn, it was reasonable for the master to conclude the disputed 6.2 acres is the same six acres conveyed to Penn in 1916.

Other evidence supports this conclusion as well. Each deed in the Estate's chain of title conveyed a total of eighteen acres. The partition deed between Edward and James Major divided eighteen acres, which indicates the 6.2 acres of disputed land was not a part of the Estate's chain of title. If F.R. Ford had received title to the Property, which he then conveyed to Edward and James Major, we conclude it would be reasonable for the specified acreage in the deed to be greater than eighteen acres. *See Von Elbrecht v. Jacobs*, 286 S.C. 240, 243, 332 S.E.2d 568, 570 (Ct.App.1985). ("[A] grantor of real property generally can transfer no greater interest than he himself has in the property."). Moreover, both the 1932 and

1936 deeds expressly described the eighteen acres as being bound on both the east and the south by "the lands of Penn School." This description is consistent with the master's finding that R.R. Legare conveyed these southern six acres in Sub Lot 8 to Penn in 1916, prior to the 1932 and 1936 deeds to the Majors. In addition, Penn's recorded plats all support the master's conclusions. The 1905 plat illustrated Penn's northernmost boundary as land bordering, but not including, the disputed 6.2 acres. The 1967 plat, on the other hand, included the disputed 6.2 acres, which is consistent with Penn's claim that it acquired the Property in 1916. *See King v. Hawkins,* 282 S.C. 508, 510, 319 S.E.2d 361, 362 (Ct.App.1984) (finding party was record owner of property when deed matched recorded plats indicating disputed property was owned by the party and party's predecessors in interest). Last, Penn had been in possession of this land for over thirty-five years without any adverse claims of ownership by the Estate, which lends support for the master's conclusion that Penn was the rightful owner of the Property. Because the foregoing evidence reasonably supports the master's finding that Penn possessed fee simple title to the Property, we affirm the master's decision.

## CONCLUSION

Based on the foregoing, the master-in-equity's order is **AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.